CITY OF PRINCETON and others, Appellants, vs. PUBLIC SERVICE COMMISSION and another, Respondents.

*December 8, 1954—February 1, 1955.*

544

548

For the appellants there was a brief and oral argument by *R. W. Peterson* of Madison.

For the respondent Public Service Commission there was a brief by the *Attorney General* and *William E. Torkelson,*

chief counsel for the commission, and oral argument by *Mr. Torkelson.*

For the respondent Chicago & North Western Railway Company there was a brief by *E. H. Borgelt* and *J. R. Walker,* both of Milwaukee, and oral argument by *Mr. Borgelt.*

STEINLE, J.   The appellants' challenge is directed principally to the Public Service Commission's findings of ultimate facts and to the order.

It appears from the findings of evidentiary facts that the railroad company experienced a substantial financial loss in the operation of the passenger trains in question during the test period, October, 1952, to September, 1953. Its revenues for that period (exclusive of the dependent revenues which were estimated at $40,000) were as follows:

| | |
|---|---|
| Passengers | $14,598 |
| Mail | 32,960 |
| Express | 6,287 |
| Other | 200 |
| Total | $54,045 |

The company's total out-of-pocket expense for the operation of these trains in the same period amounted to $137,282.

Exclusive of dependent revenues the out-of-pocket loss is $83,237. Treating dependent revenues as part of the company's income for this service, the out-of-pocket loss is still in excess of $43,000 for the period.

In determining the public need for this service, the commission considered the present use of it by the public and also such use as could reasonably be expected in the future, and also other factors. 12,457 passengers were carried by these trains during the test period, October, 1952, to September, 1953. The average number of passenger miles for each train mile was 7.85. Of the total number of passengers carried, 70.7 per cent used the trains only between Fond du Lac and Wild Rose. Private automobile registration in

counties in the area traversed by the line was one automobile for each 3.3 persons, and the commission found that the increasing preference by the public to use passenger automobiles instead of passenger trains has contributed to the decline in railroad-passenger traffic on the line. The Soo Line Railroad and Northland Greyhound Lines furnish through service between Fond du Lac and Marshfield. Major places on the branch line in question are serviced by other rail-passenger service and by public bus line.

Appellants, while conceding that the carrier sustained the financial loss in the operation of its passenger service on the branch line as indicated in the findings of evidentiary facts, contend that (1) since the profit on the freight operation of the branch line equaled or exceeded the loss in operating the passenger trains, and since there is no showing that any loss had an adverse effect on the financial operation of the carrier's system as a whole, and further, it appearing that there is present need and there will be increasing need for the service, therefore the commission's order directing discontinuance of the service was arbitrary and capricious; (2) the commission was not empowered by law to direct the discontinuance of trains upon condition of arrangements for substituted bus service on a part of the line; and (3) the railroad company was not entitled to an order discontinuing the passenger service, for the reason that, by its own voluntary acts, it was responsible for the diminution of the use of such service.

With reference to the appellants' first item of challenge to the commission's findings of ultimate fact and to its order herein, it is to be observed at the outset that under the law of this state there is no absolute or positive duty on the part of a railroad company to continue its service unconditionally in its entirety, as such duty is imposed in some states by statute, ordinances, franchise, or contract. In Wisconsin, the carrier's duty of continuing a service on a line or branch line is a

relative one. Sec. 195.08 (1), Stats., requires the furnishing of *reasonably adequate service* and facilities. Sec. 196.81 confers upon the Public Service Commission jurisdiction to authorize any railroad to abandon or discontinue any line or branch line, extension, or service thereon when in the *public interest*.

The terms "reasonably adequate service" and "public interest" referred to in these statutes relate to railroad-transportation service of such kind, quality, or condition as is required by public necessity. When considering an application for discontinuance of a line, branch line, extension, or service thereon, it is the function of the commission to determine the existing and prospective public need for the service. Such need is ascertained largely from a consideration of the public use of the service. However, other factors are to be taken into account, such, for instance, as density of traffic in the area, availability of other service, and preference by the public for private transportation.

In the present matter the commission determined that public need for the service no longer existed in the Wild Rose—Marshfield segment of the line, but that there was still some public need for it in the Fond du Lac—Wild Rose sector. These findings are supported by substantial evidence in the record.

The commission also found that the financial loss to the carrier in the operation of these passenger trains was excessive. The record indicates that such loss was heavy. The findings in this regard are also supported by substantial evidence.

In arriving at its determination of ultimate fact, the commission weighed the railroad's loss as against the public need. Such test is proper and reasonable and is the conventional method employed in deciding applications of this kind. It has heretofore had the approval of this court. *Chicago, M., St. P. & P. R. Co. v. Public Service Comm.* (1954), 267

Wis. 402, 66 N. W. (2d) 351. True, in a test of this kind, other existing factors such as profit from freight service on the line and the effect of any loss upon the general financial operation of the system are to be considered. However, such factors are separate and distinct in type from the item of the loss accruing from the operation of the particular passenger service in question. Their weight is for the commission to determine in the light of the degree of the need for the service. A proper consideration of these factors does not obligate dollar-for-dollar offset of freight profit on the line or general profit on the system against passenger-service loss on the line. It cannot be said as a matter of law that a losing passenger service must be continued merely for the reason that freight earnings make up the passenger earnings, or that the passenger-service loss does not have a substantial adverse effect on the financial operation of the system as a whole. The weight to be given the fact that freight revenues equal or exceed the loss on the passenger operation of the services sought to be discontinued, and the effect of such loss upon the financial operation of the entire system, are considerations for the commission to decide as the trier of the facts, along with other relevant and material facts such as the number of passengers using the service and the extent of the deficit.

In balancing loss against need, the primary loss factor to be taken into account is the loss from the operation of the particular services sought to be discontinued. Public need may vary in a range from slight to great. The variables entering into the items of loss and need are for the commission's consideration. It is conceivable that in one case the actual patronage on a line may be small numerically, and yet the public need may be great, whereas, in another case, the patronage may be higher as to number of passengers but the public need may in fact be slight. With reference to the first case in this set of examples, it may not be arbitrary or capricious on the part of the regulating agency to disapprove

discontinuance of the service despite the passenger loss when taking into account the freight profit or the negligible effect of such loss on the financial operation of the system. With regard to the second case, it may well be arbitrary or capricious not to approve discontinuance of the service in the light of the extent of the passenger loss, notwithstanding the freight-service profit or the lack of substantial adverse effect on the financial operation of the system.

In an application for discontinuance of service because of loss, the commission has the duty of determining whether a point has been reached where the financial loss in passenger service is so disproportionate to the need of the service that discontinuance is justifiable, irrespective of total financial earnings on the same branch line, or irrespective of the earnings of the system.

The commission considered and determined the railroad's application as a whole, but made findings and disposition on separate bases. In view of the circumstances indicated by the evidentiary facts, it is considered that such procedure was reasonable and proper under the authority of sec. 196.81, Stats.

The commission determined that in the Wild Rose—Marshfield sector of the line no public need for the service existed, and it approved of a complete discontinuance of the service there. As to the Fond du Lac—Wild Rose segment is was found that *some* public need still existed, and approval for discontinuance was given only conditionally, and with reservation of right to enter restoration of service if later such was found to be necessary.

When no public need is found to exist it is unreasonable to obligate a carrier to furnish service. As heretofore pointed out, public use is an essential and important factor in determining public need. As was said in *Thompson v. Illinois Commerce Comm.* (1953), 1 Ill. (2d) 350, 354, 115 N. E. (2d) 622:

"In determining the existence of public necessity or convenience the controlling interest to be considered is the public interest, and the convenience and necessity required to support an order of the commission and that of the public, rather than the interest or convenience of some few individuals."

Here the commission found that service on that part of the line from Wild Rose to Marshfield was unnecessary. Obviously, in view of such findings, an order to the effect that the carrier was to be compelled to supply service in that area would have been unreasonable. We are in accord with the view expressed by the court in *Ann Arbor R. Co. v. Michigan Public Service Comm.* (D. C. 1950), 91 Fed. Supp. 668, 671:

"The defendant commission has the responsibility of regulating the services and facilities of common carriers within the state for the security and accommodation of the public. It may not, however, make regulations for the furnishing of services or facilities which are obviously unnecessary and which can serve no useful purpose. The fact that the plaintiff has earnings from freight and ferry service which might absorb the losses is immaterial."

Where the railroad as a whole is profitable and is not under a positive duty to operate, the question whether the railroad will be compelled to continue the operation of an unprofitable branch line depends on the particular circumstances of the case. Anno. 10 A. L. R. (2d) 1140. As a general rule it will not be permitted to abandon such branch unless it positively appears that the requirement of continued operation is unreasonable. Anno. 10 A. L. R. (2d) 1129. A railroad will be permitted to abandon a branch line where, under all the circumstances, it would be unreasonable to require it to continue its operation at a loss. Anno. 10 A. L. R. (2d) 1142. It should be understood that the fact that a railroad as a whole has large net earnings and is a profitable enterprise, does not automatically deprive it of the right to abandon

an unprofitable branch line, if for other reasons a continuance of the operation is unreasonable. Anno. 10 A. L. R. (2d) 1129. It is neither just nor reasonable to impose an unreasonable and unjustified economic loss on the railroad, and, indirectly on the public, to require unnecessary and useless expenditures. *In re Union Pacific R. Co.* (1943), 64 Idaho, 597, 134 Pac. (2d) 1073.

It was found that some need for service still existed in the Fond du Lac—Wild Rose area. While it is apparent that the loss there was not as great as in the other segment, nevertheless it was substantial. Under the substituted bus plan the railroad is still exposed to loss. In view of the circumstances and the factors considered by the commission it cannot be said that the findings of ultimate fact and the order are unreasonable. Although the railroad company had not offered to supply substituted bus service, the commission in its protection of the public interest had directed it as a condition for the discontinuance of the railroad-passenger service. It appears that the public interest was adequately protected by the commission's reservation of right to order restoration of train service should public need increase.

With reference to appellants' contention that the commission is not authorized to direct discontinuance of trains upon condition of arrangement for substituted bus service on a part of the line, this court considers that such authority is vested in the commission by virtue of provisions in sec. 196.395, Stats., which specifically grant the right to it to make tests, or to direct *conditional orders;* and also by provisions in sec. 196.81, which provides that "in granting its approval [for discontinuance of a branch line or service thereon], the commission may impose such terms, conditions, or requirements as in its judgment are necessary to protect the public interest." Further, under sec. 194.18 (5), (6), the commission is vested with power and authority and it is its duty, sub. (5) to regulate the operating and time schedules

and routes of common motor carriers so as to meet the needs of any community, insure adequate transportation service to the territory traversed by such common motor carriers, and prevent unnecessary duplication of service between such common motor carriers or between them and the lines of competing steam and electric railroads; and sub. (6) to require the co-ordination of service and schedules of common motor carriers of property or passengers and electric or steam railroads. Under provisions of sec. 194.18 (9), the commission has the power and obligation to supervise and regulate such common motor carriers in all matters affecting their relationship with the public and with other common carriers and with each other, to the end that adequate service at reasonable rates shall be afforded. Under sec. 194.18 (12), the commission has the duty to carefully preserve, foster, and regulate transportation and permit the co-ordination of transportation facilities. In *Irwin Borough v. Pennsylvania Public Utility Comm.* (1940), 142 Pa. Super. Ct. 157, 160, 15 Atl. (2d) 547, it was held that reasonable conditions may be attached to a certificate of public convenience for abandonment.

By way of final challenge the appellants contend that upon the record they established the fact that the carrier by its own voluntary acts was responsible for the diminution of patronage on the branch line, and, therefore, it cannot be heard to complain. Such contention is based (1) that the deletion since 1950 of information of Chicago & North Western Railroad passenger service from Chicago to Green Lake and vicinity in the advertising literature of two organizations who have gathering places on the line, Baptist Retreat and Camp Robin Hood, was caused by notice given to representatives of said organizations by the railroad's division and passenger agent that trains 9 and 10 were to be removed from service, and that such deletion caused a substantial reduction of patronage; and (2) that the use of Diesel power

on the line would result in large savings, but that the railroad would not in compliance with previous orders of the commission, arrange for its use.

The commission accepted evidence and analyzed both aspects of the contention. With reference to the first item, the commission specifically found:

"Generally, the travel to and from these camps is by private automobile; but if public transportation is used, it is usually by group because of prearranged camping periods. Many of the camps have co-ordinated their camping periods so that several groups will be arriving and departing at the same time. In this manner, they may utilize special trains and obtain the convenience of through transportation. This movement to special trains, we believe, will tend to reduce patronage of trains Nos. 9 and 10; but if trains Nos. 9 and 10 would be removed, special train operations will still be available."

As to the second item the commission determined that:

"The commission can see no way of reducing the operating costs of trains Nos. 9 and 10 without affecting some other portion or branch of the railroad. Diesel operation for trains Nos. 9 and 10 would result in savings of about $10,000 annually, but the procurement of a new engine or the exchange of engines with some other operation does not appear warranted."

A careful consideration of the record indicates that the commission's findings as to these items are supported by substantial evidence. Obviously, the commission found no merit in the contention that the carrier was responsible for the diminution of the patronage. It is not within the court's province to disturb the findings as to these particulars.

We are constrained to hold that upon this record the commission's findings of ultimate fact are reasonable and are supported by substantial evidence, and that the decision is not arbitrary or capricious.

Counsel for the railroad company sought a dismissal of this appeal on the ground that appellants had failed to serve

a petition for rehearing upon all of the parties to the proceeding as required by rule of the commission. Since it appears that two of the parties not so served were actually represented by counsel for appellants, and that a third party alleged not to have been served was in fact served with the requisite petition, we are obliged to hold that there was compliance with the rule.

*By the Court.*—Judgment affirmed.