303 P.2d 713

**SAFFORD CHAMBER OF COMMERCE,** Globe Chamber of Commerce, Miami Chamber of Commerce, Bowie Chamber of Commerce, Town of Safford, City of Globe, and The San Carlos Apache Tribe, Appellants,

v.

**CORPORATION COMMISSION** of Arizona, and Timothy J. Parkman, Mit Simms, and William T. Brooks, as members of and comprising the same, Appellees.

No. 6067.

Supreme Court of Arizona.

Nov. 14, 1956.

Chester J. Peterson and Rawlins, Davis, Christy, Kleinman & Burrus, Phoenix, for appellants.

Robert Morrison, Atty. Gen., Don Corbitt, Sp. Asst., and Evans, Kitchel &

Jenckes, Joseph S. Jenckes, Jr., and Earl H. Carroll, Phoenix, and Norman S. Hull, Tucson, for appellees.

WINDES, Justice.

The Southern Pacific Company, herein designated the company, owns and operates a main line railroad through Arizona and a branch line from Bowie to Globe, a distance of 124 miles. The branch passes through Safford, Thatcher, Ft. Thomas, Calva, Bylas, Peridot, San Carlos and Cutter. Upon application of the company the Arizona Corporation Commission, hereinafter referred to as the commission, on April 23, 1953, entered an order allowing the company to discontinue the operation of passenger trains over the branch line. The Safford, Globe, Miami and Bowie Chambers of Commerce, the town of Safford, the city of Globe and the San Carlos Apache Tribe, referred to herein as the plaintiffs, brought suit against the commission under the provisions of section 69–249, A.C.A. 1939, A.R.S.1956, § 40–254, seeking to set aside this order. After trial the court made findings of fact hereinafter referred to and concluded as a matter of law that the commission's order in authorizing the discontinuance of operation was not unreasonable or unlawful and should be affirmed. Plaintiffs appeal and present seven assignments of error, all of which raise the principal question as to whether the evidence was such as to compel the trial court to rule that the order of the commission was unreasonable or unlawful.

In determining whether a railroad as a public utility should be allowed to discontinue an operation, the primary matter for determination is whether public convenience and necessity requires a continuance of the service. If the facts show no necessity for the service to meet the demands of public convenience, continuance of the operation will not be required. If a cessation of operation will result in some public inconvenience, whether there is financial loss to the company becomes important and the court will weigh the degree of inconvenience against the degree of loss and a continuation of the service will be required only if it appears from all the facts that the financial loss is less than the loss to the public by reason of the attendant inconvenience. Corporation Commission v. Southern Pac. Co., 55 Ariz. 173, 99 P.2d 702.

The court found as a fact that the company is sustaining a substantial financial loss in the operation of its trains. Witness Nines, an engineer for the company in the Bureau of Transportation, testified that for the year 1952 the out of pocket costs to operate the trains was $128,682 and the revenue derived therefrom for this period was $51,271, producing a

loss of $77,411. Plaintiffs contend that there is no evidence of loss because the costs of operation were based on formulae and samples rather than a detailed addition of each individual expenditure on the branch line. For instance, in calculating the cost of the train crew, the witness took the average pay of the crew for the first two weeks of 1953, excluding two days when the pay was excessively high, and calculated from this the wages for the year 1952. In determining this average wage, he determined the engines used by days, the average experience of calling a brakeman from regular freight assignment, the waiting days on account of passenger train operation, the deadheading to protect passenger service at Globe, and the fact that engineers' and firemen's wages vary with the weight of the engine, and thus determined a weighted average cost of the crew. To further illustrate, the witness' apparent method, in determining the cost of car repair, was to calculate the average repair costs system-wide of a particular class of car, reduce that cost to a per mile of operation basis and multiply the latter item by the number of miles of operation on the branch line. The method thus used was admitted in evidence over plaintiffs' objection but no error is assigned for its admission. It is in the record and must be given whatever evidential value it has, if any. Plaintiffs say it has none. We are unable to agree. The resulting cost may not be an exact figure but the court might well consider it a reasonable approximation of the actual costs. There is good authority for the use of a similar method. Application of Chicago & N. W. Ry. Co., 157 Neb. 594, 60 N.W.2d 662. Therein the court said, 60 N.W.2d at page 667:

"We think the formula followed by the carrier of apportioning motor, locomotive, and passenger car repairs to that class of equipment on a system-wide basis in order to get the average cost per mile for the use thereof is a fairer and more nearly accurate method of allocating such costs to individual operations than to charge to such operations the cost arising directly in connection with its use thereon."

We conclude therefore that there was ample evidence for the trial court to find that the company was sustaining a substantial loss in the operation of its passenger trains.

The court found that public convenience and necessity is not great enough to require the continuance of operation of the trains, that there was adequate substitute service available, and that the loss to the company was greater than the loss and inconvenience to the public. Paralleling the railroad from Globe to Safford is paved U. S. Highway No. 70 with adequate bus service between these two towns and all intermediate points through which the railroad pass-

es except Peridot and San Carlos, two railroad stations located on the San Carlos Indian Reservation. There was in evidence an actual count of passengers using the trains from the months of April, September, October and November of 1952, which produced an aggregate of 3,045 passengers and that the total revenue from this source was $3,274.58. There was testimony that there was an aggregate number using the trains of 9,223 during the year 1952, 6,330 of which embarked or disembarked on the Indian reservation and that between Safford and Bowie there was an average of one passenger per day each way. It is apparent that the greatest demand for the use of this passenger service was by those residing on the Indian reservation with substantially none of them utilizing the railroad from Safford to Bowie. A reasonable conclusion is that the only substantial inconvenience to those who make use of the company's passenger facilities is incurred by those on the Indian reservation that embark or disembark at the stations of Peridot and San Carlos which do not now have available bus transportation. To meet this inconvenience to which the residents on the reservation were thus subjected, the company made arrangements with the Pacific Greyhound Lines to initiate a bus service to these people in substitution of the former train service. It appears from the evidence that the bus company has secured a certificate of convenience and necessity to render this substitute service with available equipment therefor and the only reason the same is not now being rendered is that the Indian Tribal Council had not at the time of trial granted the bus company, pursuant to its application, the permission to operate on the reservation. The arrangements included the right of residents of the reservation to continue the purchase of train tickets at no extra cost and have them honored by the bus company. If they did not choose to avail themselves of this privilege, they would pay the regular bus fare.

If a company is operating at a substantial loss and there is or will be provided an adequate substitute service, the company may be allowed to discontinue. City of Princeton v. Public Service Commission, 268 Wis. 542, 68 N.W.2d 420; Corporation Commission v. Southern Pac. Co., supra. Unquestionably, the evidence indicates that some public need exists which was not otherwise supplied by other means of transportation as to those residing on the Indian reservation. The trial court could legally find from the evidence that this need was adequately satisfied by the offered substitute method of transportation. If a substitute service substantially meets the transportation needs of the public, it cannot be said that public convenience requires the continuation of a duplicate service.

It is suggested that substantial inconvenience will result by removing the train facil-

ities for handling Railway Express. It is true that the trains have been rendering this service to the express company. Concerning the effect on the public of discontinuing the operation of the trains, witness William J. Kelly, superintendent of Southern California, Arizona and New Mexico division of Railway Express Agency, testified that when the trains were operating his company used them for transportation of express; that since discontinuance they used trucking facilities without any increased cost to the public; and that in some cases the time element was better than when the train was in operation and its delivery time to the consumer was equally as good. While there was some indication that customers going to the express office might secure their express sooner through the train service, the court might well conclude that there was no appreciable inconvenience by reason of changing this method of service.

■ Plaintiffs say that the company in the past secured a raise in freight rates for the purpose of relieving the company of the loss which it was incurring from the operation of the passenger trains and that it is, as a matter of law, unreasonable to now allow cessation of the passenger service under these conditions. We observe no merit in this suggestion. If it be true that one of the reasons for allowing increased freight rates was that the company was compelled to furnish passenger service at a loss, such does not compel the commission or the court to require a continuance indefinitely of the passenger service after the necessity therefor has been eliminated. If the passenger service becomes unnecessary, the fact that the company has earnings from freight which might absorb the loss from passenger service is immaterial. City of Princeton v. Public Service Commission, supra; Ann Arbor R. Co. v. Michigan Public Service Commission, D.C., 91 F. Supp. 668. If it be a fact that the loss being sustained was a substantial factor in allowing the freight rate increase and the elimination of this loss by discontinuance of the passenger train service renders the freight rate thus secured too great, the proper method of correction is a reduction in freight rates and not a continuation of a needless service.

■ Under the provisions of section 69–249, supra, the burden is placed upon plaintiffs to show by clear and satisfactory evidence that the order of the commission is unreasonable or unlawful. The court was clearly justified in concluding that plaintiffs had not sustained this burden.

The judgment is affirmed.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.