PURCELL ET AL., CONSTITUTING THE PUBLIC
SERVICE COMMISSION OF MARYLAND, ET AL. *v.*
UNITED STATES ET AL.

No. 803.   Argued February 11, 1942.—Decided March 2, 1942.

*Messrs. Clarence W. Miles* and *Joseph Sherbow,* with
whom *Messrs. Benjamin C. Howard, Jr.* and *William B.
Rafferty* were on the brief, for appellants.

*Mr. James C. Wilson,* with whom *Solicitor General
Fahy, Assistant Attorney General Arnold,* and *Mr. Daniel
W. Knowlton* were on the brief, for the United States et al.;
and *Mr. C. M. Clay,* with whom *Messrs. Charles R. Webber*
and *John E. Evans, Sr.* were on the brief, for the Conflu-
ence & Oakland Railroad Co. et al., appellees.

Mr. Justice Black delivered the opinion of the Court.

A federal district court, composed of three judges in accordance with 28 U. S. C. § 47, dismissed the appellants' bill, which prayed for the annulment of an order of the Interstate Commerce Commission. 41 F. Supp. 309. The order permitted the Confluence and Oakland Railroad Company, as owner, and the Baltimore and Ohio Railroad Company, as lessee, to abandon a railroad line approximately 20 miles long and to discontinue service entirely in the area now served: a semi-mountainous section along the Youghiogheny River between Confluence and Oakland Junction, Pennsylvania, and Kendall, Maryland. The appellants, who also appeared as protestants before the Interstate Commerce Commission, are the Public Service Commission of Maryland and the McCullough Coal Corporation, a coal mining company which alleges it will be forced out of business if railroad service is discontinued.

The application to the Commission for abandonment was not made because the line had been operating at a loss. On the contrary, the Commission concluded that there was no evidence that the line had theretofore been a burden on the Baltimore and Ohio system, of which it was a part; or that a predictable decline in the volume of traffic would make it one in the future, if it were allowed to continue in existence undisturbed. 244 I. C. C. 451, 458; 247 I. C. C. 399, 401. But continued undisturbed existence would be an impossibility in view of a flood control project already begun by the War Department under authority of an Act of Congress. 52 Stat. 1215–1216. This project entails the construction of a dam which will create a reservoir covering an area in which twelve miles of the line are now located. It is conceded that unless a new connecting section is built, the sections of the line not to be inundated—a detached six mile segment above the dam,

and a one mile segment connecting with the main line of the Baltimore and Ohio below it—would serve no practical purpose justifying continued operation.

The appellants do not challenge the statutory authority of the War Department to submerge the line as it proposes to do. Nor do they suggest that the Commission could or should take any action to deter completion of the project. Nevertheless, they contend that since "the sole reason for the abandonment was the flood control project, the application should have been denied forthwith by the Commission because of lack of jurisdiction to grant an abandonment on such ground." But under § 1 (18) of the Interstate Commerce Act the standard prescribed for the Commission in cases of this kind is whether "the present or future public convenience and necessity permit of such abandonment." 49 U. S. C. § 1 (18). It is difficult to imagine what consideration of present or future public convenience could reasonably impel the Commission to decline to authorize abandonment of a line admittedly doomed to be rendered inoperable regardless of what action the Commission might take. And the appellants suggest none. We must dismiss the appellants' contention on this point as without merit.[1]

The appellants make the further argument that, even if the Commission did not err in permitting abandonment of the line, its order cannot stand because of the failure to

---

[1] Where projected inundation of a line made discontinuation of operations over it compulsory, the Commission has consistently given its authorization for abandonment. See Los Angeles & S. L. R. Co. Abandonment, 212 I. C. C. 597, 598: "It is apparent from the record that under the circumstances stated above the proposed abandonment is compulsory, and will not result in public inconvenience." In some such situations the Commission has attached the condition of relocation. E. g., St. Louis-S. F. Ry. Co. Trustees Abandonment, 244 I. C. C. 485. In others, it has not. E. g., Southern Ry. Co. Abandonment, 217 I. C. C. 764.

.impose a condition that substitute service be provided by relocating the line.[2] After hearing testimony on the probable cost of relocation and the probable cost of maintaining a relocated line, the Commission concluded that "considering the expenditure necessarily incident to that relocation and the increased costs of operating the line that will be caused thereby, . . . we are not justified by the public convenience and necessity in taking action herein that will require the relocation of the line." The appellants do not contest the Commission's finding, amply supported by evidence, that the relocated line would require increased operating expenses. If the Commission had based its conclusion on this finding alone, there would seem to be no adequate ground for setting its order aside in judicial proceedings. The Commission did consider relocation costs, however, and the appellants contend that this was an improper consideration which invalidates its order.

In making this attack on the order, the appellants contend that under the statute authorizing the War Department to construct flood control projects, the cost of relocation would have to be borne by the Government rather than the railroad. Cost thus borne would not affect the financial condition of the railroad itself, the appellants urge, and therefore there could be no such weakening of the railroad's capital structure as would adversely affect the transportation system. Hence, the argument continues, in that balancing of the interests of those now served by the present line on the one hand, and the interests of the carrier and the transportation system on the other, which a proper disposition of abandon-

---

[2] The Commission is empowered to attach conditions by § 1 (20) of the Interstate Commerce Act which provides in part: "The commission . . . may attach . . . such terms and conditions as in its judgment the public convenience and necessity may require." 49 U. S. C. § 1 (20).

ment applications requires, *Colorado* v. *United States,* 271 U. S. 153, the former interests must prevail.

As the court below pointed out, however, "an uneconomic outlay of funds would not be in the interests of transportation even though the money be derived from the national government." This Court has recognized that operation of the national railway system without waste was one of the purposes the Transportation Act of 1920 was intended to further. *Texas* v. *United States,* 292 U. S. 522, 530; *Texas & Pacific Ry. Co.* v. *Gulf, C. & S. F. Ry. Co.,* 270 U. S. 266, 277. And a stated purpose of the Transportation Act of 1940, in the light of which Congress prescribed that the "Act shall be administered and enforced" is "to promote . . . adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers." 54 Stat. 899. When materials and labor are devoted to the building of a line in an amount that cannot be justified in terms of the reasonably predictable revenues, there is ample ground to support a conclusion that the expenditures are wasteful whoever foots the bill. The fostering care of the railroad system intrusted to the Commission is not so circumscribed as to leave it without authority to pass on the economic advisability of relocation in a situation where someone other than the carrier provides the money. The weight to be given to cost of a relocated line as against the adverse effects upon those served by the abandoned line is a matter which the experience of the Commission qualifies it to decide. And, under the statute, it is not a matter for judicial redecision. Nor is there any indication in the Flood Control Act of 1938 that Congress desires to take away from the Commission any of the powers to make decisions of this kind which the Interstate Commerce Act had previously granted it.

The judgment of the court below is

*Affirmed.*