**PUBLIC SERVICE COMMISSION OF STATE OF NEW YORK et al. v. UNITED STATES et al.**

District Court, S. D. New York.
June 10, 1943.

John T. Ryan, Asst. Counsel, Public Service Commission, of Cortland, N. Y. (Gay H. Brown, Counsel, Public Service Commission, and George H. Kenny, both

of Albany, N. Y., on the brief), for plaintiff Public Service Commission.

John J. Broderick, of Yonkers, N. Y. (Paul L. Bleakley, Corp. Counsel, of Yonkers, N. Y., on the brief), for plaintiff City of Yonkers.

Horace M. Gray, of New York City, for plaintiff Tooley.

Robert L. Pierce, Sp. Asst. to Atty. Gen. (Tom C. Clark, Asst. Atty. Gen., on the brief), for defendant United States.

J. Stanley Payne, Asst. Chief Counsel, Interstate Commerce Commission, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., on the brief), for defendant Interstate Commerce Commission.

Thomas P. Healy and Harold H. McLean, both of New York City, for defendant New York Central Railroad Company.

Before CLARK, Circuit Judge, and CONGER and RIFKIND, District Judges.

PER CURIAM.

Plaintiffs make three points in attacking the order of the Interstate Commerce Commission authorizing the abandonment of this short railway in Bronx and Westchester Counties, New York; namely, lack of jurisdiction of the Commission, lack of evidence to support the conclusion that continued operation of the line would constitute an undue burden on interstate commerce, and lack of a fair hearing because the Commission after its decision denied motions to reopen the hearing for the production of further evidence. Under the circumstances here disclosed, the first alone seems to us to present matters not strictly within the scope of the Commission's expert determination.

The asserted lack of jurisdiction of the Commission rests on the contention that the railway to be abandoned is of the kind expressly excepted from the control of the Commission by 49 U.S.C.A. § 1(22), which states that "the authority of the commission * * * shall not extend to the * * * abandonment of * * * street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation." The challenged order authorizes the New York Central to abandon 3.1 miles of a branch electric passenger railway from Van Cortlandt Park Junction, New York City, to Getty Square, Yonkers,

New York, and to suspend service of the so-called Yonkers Branch, which includes the operation of electric trains not merely over the line to be abandoned, but also between Van Cortlandt Park Junction and Sedgwick Avenue on the Putnam main line, a distance of 4.69 miles. All other operations of the Putnam Division, which extends north beyond Van Cortlandt Park Junction as far as Brewster, New York, are by steam.

In asserting that this is but a suburban or interurban line unconnected with the rest of the Central's railroad system, plaintiffs rely on certain expressions in cases such as Piedmont & Northern Ry. Co. v. I. C. C., 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115, and United States v. Chicago North Shore & Milwaukee R. Co., 288 U.S. 1, 53 S.Ct. 245, 77 L.Ed. 583, stressing electric interurban and suburban passenger service, among others, as significant factors to be considered. It appears, however, both from these cases and from others, that the question is a practical one of operation of the system, and that if an electric passenger line is operated as part of the general steam railroad system of transportation its abandonment is within the Commission's power. See, inter alia, Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111; Hudson & M. R. Co. v. Hardy, 2 Cir., 103 F.2d 327, certiorari denied 307 U.S. 640, 59 S.Ct. 1038, 83 L.Ed. 1521; Sprague v. Woll, 7 Cir., 122 F.2d 128, certiorari denied 314 U.S. 669, 62 S.Ct. 131, 86 L.Ed. 535; and the Piedmont case, supra. Here we have no doubt but that this railway was so operated. The facts that it was electric and furnished only passenger service and that it could not run over the remaining tracks of the Central's Putnam Division do not control the showing that it was in fact operated by the railroad as a part of that division and its general system. The use of part of the Putnam tracks, the transfers given to other parts of the line, the general repair and maintenance of the Branch, and other details of operation—all appear intertwined with the operation of the system as a whole.

Without attempting to rehearse here all the significant facts, we may note, as an example of this interconnection, the fact that the bulk of the traffic on the Yonkers Branch transfers at High Bridge or University Heights to the Central's Hudson Division, where suburban trains

run to and from the Grand Central Station on a through line whose ultimate end is Chicago. Plaintiffs expressly admit that the suburban or intrastate trains on the Hudson Division are parts of the through steam railroad system to Chicago. Yet so intimately connected is this Yonkers Branch with the same operation that seats must be provided on the Hudson trains for all the transferred Yonkers passengers merely for the short run from the present end of the Yonkers Branch to the Grand Central Station, whereas those same seats would be available for the Yonkers commuters at the Ludlow and Yonkers stations on the Hudson Division near the present terminus of the Yonkers Branch—the chief alternate means of transportation available for the patrons of this Branch. In other words, the Central now provides on the branch in question service which is substantially duplicated for these passengers on its Hudson Division, concededly within the Commission's jurisdiction. It would be highly unrealistic to say that that duplicating service must be viewed as something apart from even the Hudson Division, not to speak of the Putnam Division, with which it shares trackage. We conclude that the Commission had jurisdiction in the premises.

■ Criticism of the conclusion that continued operation of the line was an undue burden on interstate commerce rests primarily upon the claimed present prosperity of the Central, concerning which the Commission made no specific findings. The Commission did, however, write a careful opinion in which it found a loss on the operation of this Branch in excess of $56,000 a year and also set forth several alternative means of transportation—by bus, street railway, and ordinary railroad service—to the middle of New York City, and held that abandonment here was in the public interest. Under the circumstances the evidence before the Commission was adequate, and the Commission's conclusion well within its authority. Simply because the Central was generally prosperous does not mean that the Commission could not authorize the abandonment of a losing branch; otherwise a railroad would stand committed to drains upon its income for costly and unnecessary service until complete bankruptcy intervened. Purcell v. United States, D.C.Md., 41 F.Supp. 309, 313, affirmed 315 U.S. 381, 62 S.Ct. 709, 86 L.Ed. 910; Town of Inlet, New York, v. New York Cent. R. Co., D.C.N.D.N.Y.,

7 F.Supp. 781; State of Colorado **v.** United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878; Transit Commission v. United States, 284 U.S. 360, 370, 52 S.Ct. 157, 76 L.Ed. 342.

■ Denial of a rehearing was clearly within the Commission's discretion, 49 U. S.C.A. § 17(6); the claimed additional evidence was not of the kind to persuade to a different conclusion. The evidence was claimed to show that a New York subway would be extended to the terminus of the Yonkers Branch, that Yonkers and New York could or would reduce tax assessments, and that the present crisis in gasoline would reduce bus transportation. But the City of New York, which favored abandonment, showed that building of the subway extension was at best a matter for the quite indefinite future and there was no hope of tax abatement there; and if prospects of lessened taxes in Yonkers were brighter, at most the reduction would be less than $9,000 per year. And there were alternative methods of transportation not dependent upon bus service. The suggestion that this loss may be used to reduce Central's excess profits tax suggests interesting possibilities for keeping declining roads alive; it may, however, be safely left with the Commission. The Commission had already allowed plaintiffs a full hearing, although not required by law to do so. Woodruff v. United States, D.C.Conn., 40 F.Supp. 949; 49 U.S.C.A. §§ 1(1)(a), 20a(6). Its denial of a further hearing cannot, therefore, be attacked here. The inconvenience which may result to former patrons of the line is, of course, regrettable, though this community seems to have more available, even if not wholly as desirable, substitute means of transportation than many which have lost trolley service in recent years. At any rate, the declining patronage shows that the public has not had sufficient use for this railway to keep it alive.

■ Though the hearing was originally set upon the plaintiffs' motion for a preliminary injunction, by agreement of the parties it was continued on the merits. Hence final disposition of the case can now be made. Certain evidence offered by the plaintiffs and objected to by the defendants we think can be held admissible on the issue of jurisdiction of the Commission and due process as to its hearing, even though it does not persuade us to a different view of the case. We think the

plaintiffs have shown no ground for relief, either preliminary or final, and accordingly their action must be dismissed on the merits. No findings of fact by us are necessary or appropriate under the circumstances; we may state our conclusions shortly that the Commission had jurisdiction and acted within its lawful powers in making the order.

The clerk is directed to enter judgment for the defendants at once, as provided in Rule 58, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.