340 P.2d 1103

Application of UNION PACIFIC RAILROAD COMPANY *for Permission to Discontinue* the Operation of Passenger Trains Nos. 73 and 74 between Lewiston, Idaho, and the Idaho-Washington State Line.

No. 8736.

Supreme Court of Idaho.

June 23, 1959.

James W. Givens, Lewiston, and Ray McNichols, Orofino, for appellant-intervenors.

Howard E. Roos and Randall B. Kester, Portland, Or., and L. H. Anderson, Pocatello, for respondent-applicant Union Pac. R. Co.

Frank L. Benson, Atty. Gen., and Robert D. Wennergren, Asst. Atty. Gen., for Idaho Public Utilities Commission.

KNUDSON, Justice.

On June 24, 1955 respondent Union Pacific Railway Co. filed its application with

the Public Utilities Commission for leave to discontinue the operation of its trains Nos. 73 and 74 between Lewiston, Idaho and the Idaho-Washington State line. Notice of the filing of such application was regularly given.

A hearing upon said application was originally set for October 18, 1955 but upon request of the intervenors (appellants) the hearing was postponed indefinitely. On October 3, 1957 respondent filed a supplemental petition alleging facts relative to the operation of its trains during the interim period and requested that the applications be set for hearing. The proceeding was thereafter consolidated for hearing with a similar proceeding pending before the Washington Public Service Commission. Joint hearings were held before both commissions at Lewiston, Idaho on November 21 and 22, 1957 and at Clarkston, Washington on January 21 and 22, 1958. On August 15, 1958 both commissions made and entered a consolidated order authorizing respondent to discontinue the operation of its said trains. Within the time required by law appellants filed their petition for rehearing which was denied by order of the Public Utilities Commission on October 3, 1958. From the order granting respondent's application and from the order denying the petition for rehearing appellants have appealed to this Court.

Trains Nos. 73 and 74 were motor passenger trains operating between Lewiston, Idaho and Ayer Junction, Washington, a distance of 89.5 miles, less than two miles of which distance is within the State of Idaho and Lewiston is the only Idaho station upon the branch line involved. Each of said trains consisted of one head-end car, a Pullman sleeper and one coach. The motive power was a diesel electric locomotive equipped with steam boiler for train heating. The air-conditioned Pullman sleeper consisted of eight sections and diner-lounge and its crew consisted of a porter, cook and waiter.

Train No. 73 departed Lewiston at 6:30 p. m. arriving at Ayer Junction at 8:55 p. m. The locomotive, coach and baggage car were there placed on a storage tract where steam was provided to heat the equipment and a watchman provided for the locomotive. The sleeper was there switched into respondent's southbound train No. 19 and proceeded to Hinkle where it was transferred to train No. 17 by which it was moved through to Portland arriving there at 5:30 a. m. It remained at Portland throughout the day and was entrained in respondent's eastbound train No. 18 leaving Portland at 9:30 p. m. the same day. It was switched out of train No. 18 to train No. 20 at Hinkle by which it was moved to Ayer Junction. It was there added to the locomotive, coach and baggage car (which had been a part of train No. 73) making train No. 74 and thereby returned to Lewiston at

7:15 a. m. where it remained and was made ready for departure the following evening as train No. 73.

Respondent's application is based upon two alleged grounds:

(a) That the revenues from the operation of said trains are wholly insufficient to justify continuing operation thereof, and

(b) That the public convenience and necessity no longer require the service performed by said trains.

Appellants have devoted considerable argument in support of their first assignment of error under which it is contended that the commission erred in not requiring the respondent to present for consideration by the commission respondent's train revenues of both freight and passenger service upon the line over which the trains involved were operated. In pursuance of their contention that such revenues were an essential element of proof to be considered they repeatedly sought, without avail, to elicit such information from respondent's witnesses.

This Court is not committed to any holding that such evidence is essential in every case involving a comparable application. On the converse this Court has stated that no fixed or definite rule can be applied in such cases. Each case must be considered and determined in the light of all facts and circumstances of the individual case. See

In re Union Pacific R. Co., 64 Idaho 597, 134 P.2d 1073. In the foregoing cited case the court had under consideration an application comparable to the one here involved yet did not have before it any statement or estimate of earnings or income from handling freight. The applicant in that case, as here, set up a net loss in operating passenger service.

In support of their said contention appellants cite the case of Atchison, Topeka & Santa Fe Ry. Co. v. State Corp. Commission, 182 Kan. 603, 322 P.2d 715, 725, wherein the Supreme Court of Kansas said:

"* * * that *in a proper case* evidence of the total net revenue of an entire railroad system may be admitted and considered in the matter of the discontinuance of passenger service, depending on the facts and circumstances of the particular case before the Commission." (Emphasis supplied.)

This Court is not in disagreement with such pronouncement.

The following is also an excerpt from said last cited decision:

"The Commission contends that the Company in this case has made no claim that it is operating at a loss or failing to receive a fair rate either on its total investment or upon its in-

vestment in the State of Kansas. It relies upon an argument that freight rates have been increased to offset passenger deficits. We observe no merit in this suggestion. If it be true that one of the reasons for allowing increased freight rates was that the Company was compelled to furnish passenger service at a loss, such does not compel the Commission or the court to require a continuance indefinitely of the passenger service after the necessity therefor has been eliminated. If the passenger service becomes unnecessary, the fact that the Company has earnings from freight which might absorb the losses from passenger service is immaterial. Safford Chamber of Commerce v. Corporation Commission, 81 Ariz. 226, 303 P.2d 713.

"The federal supreme court has always held that it was the function of regulatory acts to eliminate, not to perpetrate economic waste. Purcell v. United States, 315 U.S. 381, 62 S.Ct. 709, 86 L.Ed. 910; and see, State ex rel. Caster v. Kansas Postal-Telegraph-Cable Co., 96 Kan. 298, 150 P. 544.

"If the Company could be compelled to continue passenger service on a branch line simply because it was generally prosperous, a railroad would as a result of such logic stand committed to drains upon its income for costly and unnecessary service until complete bankruptcy intervened. Public Service Commission of State of New York v. United States, D.C.1943, 50 F.Supp. 497 and see, Chicago, B. & Q. R. Co. v. Illinois Commerce Commission, D.C.1949, 82 F.Supp. 368":

In the case of Application of Chicago, B. & Q. R. Co., 152 Neb. 352, 41 N.W.2d 157, 159, the Supreme Court of Nebraska stated as follows:

"Motor passenger trains operated on a branch line of railroad at a substantial loss may properly be discontinued, where adequate public transportation is otherwise furnished, though the main line is operated at a profit and also where the branch line from which the trains will be discontinued is operated at a profit."

In the case of Ann Arbor R. Co. v. Michigan Public Service Commission, D.C., 91 F.Supp. 668, 671, the applicant railroad proved that the operating loss for the passenger train involved exceeded $137,000 per year and the Court said:

"The fact that the plaintiff has earnings from freight and ferry service which might absorb the losses is immaterial. Where there is no public necessity present, an order compelling the plaintiff to operate its trains under

the circumstances of this case and under the conditions set out by the defendant Commission, is arbitrary and unreasonable, and carries with it the confiscation of the plaintiff's property without compensation, and denies to the plaintiff the equal protection of the laws, in violation of the Constitution of the United States."

This Court in the case of In re Union Pacific R. Co., supra, referred to this subject and stated [64 Idaho 597, 134 P.2d 1077]:

"In other words, the fact one branch of its service reflects a loss, and, at the same time, the entire earnings of the system reflect a substantial profit, would not be decisive of its duty both under §§ 5 and 6, Art. 11, Const., and § 59–302, I.C.A., to furnish to the public adequate and reasonable service.

\*    \*    \*    \*    \*    \*

"We have in the record no estimate of net earnings of the system; that is to say, no estimate of earnings for handling freight. Appellant has simply set up a net loss in operating passenger service. It is conceded by appellant the operation of passenger service over all railroads within the United States reflects a loss; \* \* \*"

Evidence relative to the freight or system revenues is not necessary or relevant in all cases in determining public necessity. However, in a proper case, as where a common carrier seeks to avoid an absolute duty and an issue of undue or unreasonable economic burden is raised then it may be considered proper and necessary to examine into all revenues of the carriers in an effort to determine if an order requiring the utility to furnish the service would be arbitrary and unreasonable and a deprivation of its property without due process of law. See Missouri-Kansas-Texas R. Co. v. State, 189 Okl. 685, 119 P.2d 835. The public need can be determined regardless of whether the utility is making a profit.

In a proceeding of this kind the revenue, expenses and losses resulting from the operation of a train have a direct bearing upon whether or not public convenience and necessity require the continued operation of any particular train but such evidence is not controlling. The important question in such cases is "does a public necessity exist?" In determining such a question it is proper to consider at least three factors, (1) the use made by the public of the service; (2) the availability and adequacy of other transportation facilities; and (3) the cost of providing the service. The best evidence as to whether there is a public necessity for continuing the operation of the trains is the extent to which the public makes use of them.

In connection with the public's use of the service respondent introduced testi-

mony and a number of exhibits disclosing the number of passengers using the trains involved and the passenger revenue therefrom during the period commencing March 1, 1955 and ending December 31, 1957, a summary of which is set forth in the commission's "Summary of Evidence" as follows:

"Summary of Trips, No. of Passengers & Passenger
Revenues of Trains 73 & 74

|  |  | 10 months 1955(a) | 1956(b) | 1957(c) |
|---|---|---|---|---|
| 1. | Number of trips | 612 | 732 | 730 |
| 2. | Passengers Carried | 4,456 | 4,776 | 4,153 |
| 3. | Average Revenue Passengers per Trip | 7.28 | 6.52 | 5.69 |
| 4. | Ticket revenue | $9,761.39 | $10,470.32 | $10,307.20 |
| 5. | Average revenue per trip | 15.95 | 14.30 | 14.12 |

References:
    (a) Exhibit 6 – Statement No. 6
    (b) Exhibit 6 – Statement No. 7
    (c) Exhibit 26"

Respondent's Exhibit No. 7 discloses that the daily average of occupancy of the sleeping cars from Portland to Lewiston for the year 1955 was 3.2 passengers which average dropped to 2.6 in the year 1956. From Lewiston to Portland the daily average dropped from 3.3 passengers in 1955 to 2.8 passengers in 1956.

The evidence relative to other available transportation facilities discloses that four buses operated daily between Lewiston and Spokane. The four southbound buses from Spokane continued on to Pendleton where connections could be made with respondent's east-west mainline trains. There were two northbound bus schedules from Pendleton to Lewiston and in addition a daily service was available between Lewiston and Boise. The Northern Pacific Railway provided a daily service by Budd R.D.C. car between Lewiston and Spokane making connections with trains to Portland, Seattle and points east. There existed an air service in the area through seven daily airline schedules providing service to Portland, Seattle, Boise and intermediate cities and to destinations beyond. In addition to railway express, bus and motor freight carriers provide express service in the area.

High quality highways running in various directions provide access by automobile to all of the larger cities in the northwest and connecting secondary roads afford access by motor vehicles to all communities located along the route of the trains here involved.

The evidence discloses that between 1946 and 1956 ownership of private motor vehicles increased in Nez Perce County 133%. In the case of Atchison, Topeka & Santa Fe Ry. Co. v. State Corp. Commission, supra the Supreme Court of Kansas referred to the use of highways and private automobiles as follows:

"Today it is a matter of common knowledge that persons who travel on short trips, that is 200 miles or less, will seldom use the train. The primary reason for this is that automobiles have become a necessity. Good highways supported by tax money, good automobiles and a schedule of one's own choosing lead to the use of an automobile rather than the train. Few of those who so travel know or care if the train operates over the route they intend going; they neither know nor care whether the train coach is modern or not; they are not interested in when the train leaves or when it returns. Most people never even inquire as to such matters. They use their own cars. Texas & New Orleans R. Co. v. Railroad Commission, Tex. Civ.App.1949, 220 S.W.2d 273."

In the case of Chamber of Commerce of City of Hot Springs v. Chicago, Rock Island & P. R. Co., 220 Ark. 631, 249 S.W.2d 8, 11, the Supreme Court of Arkansas said:

"The expansion and improvement of highways and the increase of passenger automobiles during the past thirty or forty years have caused a drain on railroad passenger revenues and have brought about a condition that cannot be overlooked by the courts and fact-finding agencies in the consideration of questions such as are presented here."

To substantially the same effect is the case of Ann Arbor R. Co. v. Michigan Public Service Commission, supra.

As to the relevancy of evidence disclosing the cost of providing the service this Court, in the case of In re Union Pacific R. Co., supra, stated:

"As heretofore stated, it is proper to take into consideration expense of furnishing service in determining whether or not the patronage justifies the expense, however, it is not the most important question to be considered by the Commission; the controlling question being the necessity and reasonableness of the service to the public."

In this connection respondent's exhibit 6 contains the following summary of revenues, out of pocket expenses and net loss from operation of the trains involved:

"Summary of Revenues, Out of Pocket Expenses, and Net Loss from Operation of Trains 73 & 74 between Lewiston & Ayer

|  | 10 months 1955(a) | 1956(b) | 11 months 1957(c) |
|---|---|---|---|
| Revenues | $17,299.58 | $19,102.63 | $17,042.55 |
| Out of Pocket Expenses | 95,288.41 | 114,259.54 | 108,167.11 |
| Net Loss | $77,988.83 | $95,156.91 | $91,124.56 |
| Train Miles | 54,516 | 65,148 | 59,452 |
| Net Loss per Train Mile | $ 1.4306 | $ 1.4606 | $ 1.5327 |

References:
(a) Exhibit 6 – Statement No. 11
(b) Exhibit 6 – Statement No. 12
(c) Exhibit 25"

Said exhibit No. 6 also discloses that in addition to the loss mentioned in the foregoing summary respondent's operation of the Pullman car line has resulted in a net loss per car day of $93.03 during 1955, $102.77 during 1956 and $100.04 during the first nine months of 1957. The evidence submitted by respondent discloses that the trains here involved have failed to produce sufficient revenue to meet the wages of the train and Pullman crews.

Under appellants' assignments of error numbered II, VI and IX it is contended in substance that the commission's findings relative to the revenues, expenses and net cost from operation of said trains are not supported by competent evidence.

It is also contended that there is insufficient evidence to support the finding that other adequate transportation and express facilities are available in the area and that the continued operation of the trains involved is no longer required by the public convenience and necessity. The only evidence introduced relative to the revenues and expense from the operation of said trains was introduced by respondent and although it is, to some extent, disputed by appellants we cannot say that it is not competent evidence. Appellants introduced evidence that there were approximately 120,000 people in the area who should occasionally have use for the trains here involved. Conflicting evidence was introduced relative to the findings complained of but we cannot say

that there is not sufficient competent evidence to support them.

■ Assignment of error No. III complains that the commission erred in not finding that improved equipment and more effective advertising would reasonably have been expected to increase passenger patronage. The evidence discloses that during a two-year period subsequent to the filing of its original application, respondent carried on newspaper advertising of passenger service in seven newspapers published in the immediate and surrounding areas (dailies and weeklies) together with publishing and circulating some pamphlets advertising the passenger service made available by the trains involved. Just what result would be obtained by increased advertising or the use of more attractive equipment is very speculative. The probability that such a program would produce substantially increased revenues is not supported by the experience of similar short-haul passenger trains throughout the country.

■ Appellants' assignment of error No. IV wherein it is contended that the commission should have found that respondent's passenger trains provide the only mode of transportation, public or private, in and out of Lewiston at many times during the winter months is not supported by the evidence.

Under assignment No. V appellants complain that the commission did not find that communities along the line of the railroad do not have other available public transportation and that private transportation is available only during parts of each year. Such complaint is not well founded for two reasons (1) the area involved is not within the jurisdiction of the Public Utilities Commission of this state and (2) the evidence (based on the records of nine months during 1957) discloses that only 1.6 passengers per day boarded train No. 73 at stations other than Lewiston along the branch line involved and only 1.5 passengers per day departed train No. 74 at stations other than Lewiston along said line.

As part of the evidence submitted by respondent was its offer to provide, upon sanction by the Interstate Commerce Commission, a substitute motor for rail operation between the city of Lewiston and Hooper Junction, Washington a station on its main line. The record does not disclose what if anything has been done to make available such service other than the filing of its application with the Interstate Commerce Commission. Aside from a brief reference contained in appellants' brief the subject is not discussed in the briefs of either party and there is nothing to indicate whether such proposed substitute service is desired by appellants if the train service is discontinued. There is therefore no is-

sue before this Court under which it could be determined whether such proposed substitute service would be a proper and adequate service and a public convenience to the area involved. That is a matter remaining within the jurisdiction of the commission.

A review by this Court upon an appeal such as is here involved is limited to a determination of whether the order appealed from violates any right of appellants under the Constitution of the United States and of the State of Idaho. It must either affirm or set aside the order of the commission. Art. 5, Sec. 9, Idaho Constitution, Sec. 61–629, I.C.; Nez Perce Roller Mills of Lewiston v. Public Utilities Commission, 54 Idaho 696, 34 P.2d 972.

"The Commission is vested with discretionary power, and, in the absence of abuse of such power, this Court would not be justified in setting aside its order." See In re Union Pacific R. Co., supra.

The evidence in this case shows that the service afforded by other common carriers in the area, after the discontinuance of the subject trains, is adequate to meet the public needs. It also shows that high quality highways provide direct routes in various directions for private automobiles. When we take into consideration the limited public use of the passenger service, the expense and net loss to the railroad we cannot say that the commission abused its discretionary power in entering the order appealed from. The order of the commission is affirmed.

PORTER, C. J., and TAYLOR, SMITH and McQUADE, JJ., concur.