**TOSE, INC.**
**and**
**O'Connor's Express**
**v.**
**UNITED STATES of America,**
**and**
**Interstate Commerce Commission.**
**Civ. A. No. 68–2576.**

United States District Court
E. D. Pennsylvania.
Aug. 7, 1969.

Desmond J. McTighe, McTighe, Koch, Brown & Weiss, Norristown, Pa., for plaintiffs.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa.; Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel, Nahum Litt, Atty., I. C. C., Washington,

D. C., for Interstate Commerce Commission.

V. Baker Smith, James W. Patterson, Morgan, Lewis & Bockius, Philadelphia, Pa., for AAA Trucking Corp., Accelerated Transport–Pony Express, Inc., Branch Motor Express Co., Friedmans Express, Inc., Hall's Motor Transit Co. and Jones Motor Co., Inc.

Maxwell A. Howell, Corcoran, Foley, Youngman & Rowe, Washington, D. C., Francis P. Barrett, Barrett and Barrett, East Milton (Boston), Mass., V. Baker Smith, Morgan, Lewis & Bockius, Philadelphia, Pa., for Eastern Freight Ways, Inc., Easton Motor Freight, Inc., M & M Transportation Co., Royal Motor Lines, Inc., St. Johnsbury Trucking Co., Inc., and Stearly's Motor Freight, Inc.

## OPINION AND ORDER

Before FREEDMAN, Circuit Judge, and WOOD and BODY, District Judges.

WOOD, District Judge.

This is an appeal from a Decision and Order of the Interstate Commerce Commission which approved the acquisition by Tose, Inc., of O'Connor's Express, Inc., but refused to allow the transfer of certain operating rights formerly held by O'Connor. Pursuant to 28 U.S.C. § 2284(1) it was determined that the issues involved were appropriate for hearing by a three-judge court whereupon Chief Judge of the Third Circuit, Hon. William H. Hastie, appointed a panel to hear the matter. We subsequently permitted the intervention of several other shipping firms to defend the Commission's decision.

A statement of the legal context and the pertinent proceedings before the Commission is appropriate before reaching the issues at hand. Tose filed an application with the Commission on February 4, 1966, seeking approval of the Commission pursuant to Section 5 of the Interstate Commerce Act, 49 U.S.C. § 5 to acquire control of O'Connor's through purchase of its capital stock and concurrently to merge the acquired carrier into itself. Section 5(2) of the Act provides in relevant part that

"(a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—

(i) for two or more carriers to consolidate or merge their properties or franchises, * * *

(b) Whenever a transaction is proposed under subdivision (a) of this paragraph, the carrier or carriers * * * shall present an application to the Commission * * *. If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subdivision (a) of this paragraph and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable: * * *."

In its application, Tose requested that its prior operating rights be merged, with some modification, into those of O'Connor, so as to expand its area of operation. Prior to filing, Tose had authority to operate as a "regular route" common carrier between Bridgeport, Pennsylvania, and New York City, serving several intermediate points, and as an "irregular route" carrier of specified commodities from, to and between specified points in Pennsylvania, New York, New Jersey, Delaware, Maryland, Virginia, and the District of Columbia. Prior to filing, O'Connor's held authority to provide "irregular" route service between a specified area in and around New York City and described territory in Pennsylvania and New Jersey, and between a specified area in New Jersey and points in eastern New York, western Connecticut, and southwestern Massachusetts. Pending hearing, the Commission, pursuant to its authority in Section 210a (b) of the Act, 49 U.S.C. § 310a (b) and Section 9(b) of the Administrative Procedure Act, 5 U.S.C. § 558, granted Tose

temporary authority to operate in the areas requested.

The hearing of Tose's application was held before a Hearing Examiner in New York between October 17 and October 28, 1966. Some 22 shippers who had existing operating rights in the areas where Tose and O'Connor were authorized to render service, entered appearances to oppose the granting of authority for the merger of assets and operating rights. One of the protestant's contentions which is of immediate relevance was that certain of O'Connor's operating rights had become dormant through disuse. In a Section 5 application proceeding the burden is upon the applicant to show that a new service will not be created. To do this it must establish that substantial operations had continued under authority already existing, and that the purchased rights would not be put to a use different from their prior use. Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98 (W.D.Tex.1967); affd. per curiam 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968); Great Coastal Express, Inc. v. United States, 243 F.Supp. 943 (E.D. Va.1965) affd. per curiam 382 U.S. 369, 86 S.Ct. 546, 15 L.Ed.2d 424 (1966). If the Commission finds that a new service will be performed, either because of reactivation of dormant rights or because of a different use, the carrier has the burden of proving that public convenience and necessity require a grant of the new authority. Braswell Motor Freight Lines v. United States, supra; C & H Transportation Co. v. United States, 249 F. Supp. 97 (N.D.Tex.1965); Shein v. United States, 102 F.Supp. 320 (D.C.N.J. 1951) affd. per curiam, 343 U.S. 944, 72 S.Ct. 1043, 96 L.Ed. 1349 (1952).

With respect to the questions which are relevant in the instant appeal, the Examiner found that the "operations of O'Connor's prior to the agreement with Tose were substantial but that such substantial operations were confined to a limited geographic area consisting of authorized portions of New York and New Jersey and did not extend to points in

the states of Pennsylvania, Massachusetts, and Connecticut." 104 M.C.C. 890–1. He therefore concluded, *inter alia*, that O'Connor's operating rights in Pennsylvania, Connecticut and Massachusetts were dormant but that the evidence of O'Connor's past operations showed sufficient service to a representative number of points in New York and New Jersey to negate a finding that service to authorized portions of these states had been abandoned. He then considered the evidence introduced by Tose to establish that a public need for reactivation of the dormant O'Connor's rights existed and concluded that "the testimony of the shipper witnesses falls short of establishing a public need for the additional services of Tose to and from the O'Connor points in Pennsylvania, Connecticut and Massachusetts." 104 M.C.C. 892. After rejecting a number of the protestant's contentions which would have defeated the merger but which are not directly relevant here, the Examiner recommended to the Commission that the proposed merger was in the public interest and ought to be approved subject to the cancellation of O'Connor's dormant operating rights in Pennsylvania, Massachusetts, and Connecticut.

In a Memorandum and Order released on October 1, 1968, the Commission affirmed and adopted *in toto* the Examiner's report and recommendations without oral argument and without additional findings and conclusions.

Tose and O'Connor have advanced three arguments in this Court in seeking to upset the decision of the Commission. They first contend that the finding of dormancy in O'Connor's routes to Pennsylvania, Massachusetts and Connecticut was arbitrary and unwarranted. Secondly, they argue that the Examiner and the Commission acted arbitrarily in not finding a public need for the reactivation of operating rights to Massachusetts and Connecticut. Finally, they contend that the Commission acted arbitrarily by adopting the Hearing Examiner's findings and conclusions *in toto* without further findings or conclusions of its

own or answers to the numerous exceptions filed in opposition to the Examiner's report.

■ With respect to the first two contentions, it should be clear that this Court's function on review of the Commission's conclusions and order is extremely limited. We are not to substitute our judgment for that of the Commission because we disagree with the conclusion it has reached from the evidence presented to it; we are to consider only whether the Commission's conclusion has a rational basis and is supported by the evidence. In United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946), the Supreme Court, in reversing a District Court which had substituted its judgment for that of the Commission stated that:

"We think the court misconceived not only the effects of the Commission's action in these cases but also its own function. It is not true, as the opinion stated, that ' * * * the courts must in a litigated case, be the arbiters of the paramount public interest.' This is rather the business of the Commission, made such by the very terms of the statute. The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." 327 U.S. 515, 535, 536, 66 S.Ct. 687, 698.

Similarly, the Supreme Court stated in McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544 (1944) with respect to the Commission's determinations of what is in the public interest under Section 5(2) of the Act that:

" * * * 'The wisdom and experience of that commission,' not of the courts, must determine whether the proposed consolidation is 'consistent with the public interest.' Cf. Interstate Commerce Commission v. Illinois Central R. Co., 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280; Pennsylvania Co. v. United States, 236 U.S. 351, 35 S.Ct. 370, 59 L.Ed. 616; United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S.Ct. 931, 84 L.Ed. 1243; Purcell v. United States, 315 U.S. 381, 62 S.Ct. 709, 86 L.Ed. 910. If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order." 321 U.S. 67, 87, 88, 64 S.Ct. 370, 381.

See also Gilbertville Trucking Co. v. United States, 371 U.S. 115, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934).

■ Viewed in this light, we think that the Commission's finding of dormancy was fully justified and warranted by the evidence. It is not alleged that the Examiner erred in failing to find any particular fact, and indeed the testimony and evidence is carefully summarized in the Examiner's Report. In his conclusion subsequently adopted by the Commission the Examiner stated at 104 M.C.C. 891 that

· "As set forth above, no shipments were transported by O'Connor from Pennsylvania points and only three shipments were transported to a single point in Pennsylvania. No shipments were transported by O'Connor to or from points in Massachusetts. No shipments were transported by O'Connor from points in Connecticut and only 28 shipments were moved by O'Connor to points in Connecticut

during the entire year 1965. Applying the guidelines developed by the Commission applicable to irregular-route operating rights such as those held by O'Connor, the examiner concludes that O'Connor's operating rights in the states of Pennsylvania, Massachusetts and Connecticut were dormant at the time of the Tose-O'Connor negotiations."

Tose and O'Connor contend here that testimony as to illness, family problems and financial difficulties in a small business like O'Connor's plus O'Connor's representations that the exhibits it presented were only representative of what was in actuality a larger volume of shipments to Pennsylvania, Massachusetts and Connecticut should have led the Commission to conclude that O'Connor's had not allowed its prior rights to become dormant. These facts admittedly were factors which the Commission and the Examiner could consider in reaching their conclusion concerning dormancy. However, the Commission and the Examiner were clearly aware of the history of the O'Connor's enterprise (the Examiner set it out in detail in his recommended decision) as well as the facts cited above relating to disuse of its operating rights, and we cannot say that his conclusion was arbitrary or without support in the evidence.

The contention advanced most vigorously by the appellants is that the Examiner and the Commission erred in not finding a public need to reactivate O'Connor's dormant operating rights to Massachusetts and Connecticut. It is argued that the testimony of thirty shipper witnesses favorable to Tose and O'Connor was overwhelming and was not rebutted by the protestants so that the Commission's conclusion was arbitrary and without foundation in the evidence. It is further argued that the testimony before the Examiner showed that Tose offered certain "specialized services" to shippers not offered by other shippers and receivers. These allegedly unique services included: (1) mechanical protective services against freezing during five working days per week on less than truckload (LTL) shipments; (2) refrigerated service on less than truckload shipments; (3) an adequate number of trucks with hydraulic lift gates for less than truckload shipments; (4) an adequate number of flat-bed trailers for less than truckload shipments; and (5) radio control on all trucks and from all terminals. It is contended that since Tose was the only shipper offering these unique services, the Commission's decision that reactivation of the O'Connor rights was not in the public interest ignored the evidence of these services and was clearly arbitrary because it deprived "thousands and thousands" of shippers of these modern devices.

After a review of the record, we find to the contrary that there was clearly substantial evidence in the record to rebut Tose and O'Connor's contention that it was in the public interest to reactivate O'Connor's rights because Tose offered special services not available from other shippers. The Examiner's careful summary of the evidence presented by the twenty-two protestants, with which we are in accord and which is not attacked as inaccurate, shows that there was considerable testimony on behalf of the protestants that the five protective services and modern devices offered by Tose were not unique, but were commonplace and are offered in varying combinations by other shippers with existing operating rights in Connecticut and Massachusetts. (e. g. Lombard, M & M, Nelson, St. Johnsbury, Adley). Some of the representatives of these protestants testified that they offered all or nearly all of the above services claimed to be offered uniquely by Tose, that they had not had any complaints about deficiencies in their existing services in this respect, but that they would be able and willing to provide such services if they were requested by customers.

There was therefore credible contradictory evidence on the record in this respect, and the Examiner and the Commission could properly resolve this question against Tose and O'Connor. This

is apparently what happened. The Examiner in his report noted that only a few of the thirty shippers produced by Tose shipped into Massachusetts or Connecticut and that in addition " * * * it is not unexpected that a well-liked carrier such as Tose, after many years of satisfactory and accommodating service between its home-base area of Philadelphia-Bridgeport and northeastern New Jersey-New York City area, could present a large number of friendly shipper witnesses, most of them long-time customers of Tose with their business locations near the offices and terminals of Tose, to testify in support of its application for an enlargement of its territory." 104 M.C.C. 892.

Moreover, aside from the general availability of special modern services from other existing carriers and aside from the other objections advanced by the protestants against granting Tose rights in Massachusetts and Connecticut, even if it could be shown specifically from the record (which the appellants do not) that it was uncontradicted in the evidence that Tose offers a special service at a special point, e. g. refrigerated LTL on Fridays which was not offered by other shippers, the Commission's conclusions could still find rational support in the evidence. It might have concluded under such circumstances that although Tose offered such a special service at a special time, in view of the the willingness and ability of other shippers to provide such services when requested, and in view of the possibility of injurious competition in other areas if Tose were granted operating rights, Tose had not satisfied its ultimate burden of showing that there was a public need for its services. We therefore conclude that there was a reasonable basis in the evidence for the Commission's decision to refuse to reactivate O'Connor's rights or to grant Tose rights in Massachusetts and Connecticut.

■■ The final objection of the appellants is to the Commission's use of the so-called "DANDO" device whereby it adopted the findings and conclusions of the Examiner without hearing and without further findings or conclusions. This device has been affirmed on a number of occasions and we see no objections to its use in the circumstances of this case, especially in view of the careful and thorough decision of the Examiner. Houff Transfer, Inc. v. United States, 291 F.Supp. 831 (W.D.Va.1968); Younger Brothers, Inc. v. United States, 238 F.Supp. 859 (S.D.Tex.1965); North American Van Lines, Inc. v. United States, 217 F.Supp. 837 (N.D.Ind.1963), Deioma Trucking Company v. United States, 233 F.Supp. 782 (N.D.Ohio 1964). As the Court stated in *Younger*, at 238 F.Supp. 859, at 861–862

"This leaves only the tag end contention that in its disposition of the case, the Commission failed to comply with the requirement of § 8(b), 5 U.S.C.A. § 1007(b) of the APA, that the order reflect the reasons and basis for the findings and conclusions. If this is a claim that Division 1, otherwise fully satisfied with Examiner's Report, has to go through the laborious process of issuing its own decision-report, it quickly fails. The Commission, as do other adjudicatory tribunals, court or administrative, has the right, if not the duty, to exercise imaginative resourcefulness and judicial inventiveness in developing procedures which enable it to stem the tide of ever increasing backlogs. * *

"The DANDO device is certainly permissible. * * * When pursued it means, of course, that the Commission's action stands or falls with the Examiner's Report. From that viewpoint, there is nothing to the criticism leveled here. * * * ”

## ORDER

And now, this 7th day of August, 1969, it is ordered by this Court that the Order of the Interstate Commerce Commission dated October 1, 1968, affirming and adopting as their own the findings of the Hearing Examiner served April 15, 1968, recommending approval of the application subject to conditions ef-

fective sixty days from the date of service thereof and terminating temporary authority granted July 14, 1966 is affirmed.