STATE OF TEXAS, Petitioner,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents.

No. 80–1715
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Feb. 26, 1981.

Mark White, Atty. Gen., R. Lambeth Townsend, Asst. Atty. Gen., Austin, Tex., for petitioner.

Barry J. Brooks, Brooks & Matthews, Dallas, Tex., for intervenor, Tex-Iron, Inc.

Benjamin R. Civiletti, Atty. Gen., John J. Powers, III, Daniel J. Conway, U. S. Dept. of Justice, David Popowski, Robert J. Grady, I. C. C., Washington, D. C., for respondents.

Raymond J. Sallassi, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., Jose E. Guzeman, Jr., San Francisco, Cal., for intervenor Southern Pacific.

Before GEE, RUBIN and RANDALL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

■ The State of Texas and Tex-Iron, Inc., as intervenor, contend that the Interstate Commerce Commission failed to evaluate properly public convenience and necessity in permitting Southern Pacific (SP) to abandon that part of its railroad line running between Bonita Junction and Seagoville, Texas, on condition that it sell two segments of the line to its subsidiary, Southwestern Railway Company (SSW), in order that some of the service formerly provided by the SP line be continued. The issuance of a certificate of public convenience and necessity, the predicate to such an abandonment, is entrusted to the sound judgment of the ICC. 49 U.S.C. § 10903(a). Finding that the decision it reached was supported by substantial evidence in the record and was consistent with the statutory authority given it, we affirm.

SP sought to abandon its 144.14 mile branch line running between Bonita Junction and Seagoville, two small towns southeast of Dallas. To minimize the impact of the action on the surrounding community, the ICC required that two segments, one of 15.82 miles and the other of 2.4 miles, which handled 40% of all the traffic involved, to be sold to SSW.

At a hearing before an Administrative Law Judge, SP adduced evidence that the branch line was operating at a substantial loss, causing a burden on SP's entire system of interstate rail service, that there was scant prospect of converting the operation into a profitable one in the future and that, while a relatively small number of customers using the line might be inconvenienced, reasonable alternative methods of transportation were available. Texas and Tex-Iron offered evidence that the operation was in fact profitable, or would soon be, because business on the line would increase, and contended that, even if the operation was unprofitable, its service was essential. The ALJ found that the line was operating at a loss of over $500,000 a year, but attributed much of the loss to SP's management. He found that abandonment would create stress in the area's economy and refused to consider the proposed sale of two segments to SSW.

On appeal, a three member division of the Commission reviewed the ALJ's findings. It held that consideration of the sale to SSW was necessary for an accurate evaluation of whether the abandonment would be in the public interest. Analyzing the effect of the proposal based on the assumption that SSW would continue to operate the two segments, the Division found that the impact of abandonment on the surrounding community would be less than the ALJ had estimated and that the projected future increase in cargo could be handled by SSW. It decided that SP's losses were not due to its fault, but reduced the estimated loss to $286,304. It also concluded that, on the record as a whole, the public interest did not require SP to continue to operate the line.

■ On petition for further review, the full Commission adopted the Division's decision. It is this conclusion alone that we review, to determine whether it is supported by substantial evidence. See ICC v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed.2d 2051, 2058 (1948). It is not our task to determine whether there are better ways to run a railroad than those approved by the ICC, for the discretion given it to determine issues of public convenience and necessity is broad. See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 293, 95 S.Ct. 438, 446, 42 L.Ed.2d 447, 460 (1974); United States v. Southern Ry., 364 F.2d 86, 93 (5th Cir. 1966), cert. denied, 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967). It is the Commission's exclusive province to draw every legitimate inference from the evidence and to evaluate and determine its weight. ICC v. Parker, supra, 326 U.S. at 65, 65 S.Ct. at 1493, 89 L.Ed.2d at 2058; United States v. Chicago Heights Trucking Co., 310 U.S. 344, 352–53, 60 S.Ct. 931, 935–36, 84 L.Ed. 1243 (1940). It is necessary, of course, that the Commission's decision be supported by substantial evidence and that it not be arbitrary, capricious, or an abuse of discretion. Bowman, supra, 419 U.S. at 284, 95 S.Ct. at 441, 42 L.Ed.2d at 454.

■ The Commission's role in abandonment proceedings is to balance the immediate and local interests of the community and the shippers against the broader public interest in freeing interstate commerce from undue burdens. *State of Nebraska v. United States*, 255 F.Supp. 718, 721 (D.Neb. 1966). The ICC must consider whether the branch line is profitable or whether it imposes a drain on other income, *Purcell v. United States*, 315 U.S. 381, 385, 62 S.Ct. 709, 711, 86 L.Ed. 910, 914 (1942), as well as the likely expense of continued operation, *Id.*, 315 U.S. at 385, 62 S.Ct. at 711, 86 L.Ed. at 914.

■ The evidence on every aspect of the line's operation was conflicting, and the two opposing factions met head-on on every issue of fact. We cannot say that the conclusions the ICC drew lacked ample record support. The ICC has both the duty and the authority to weigh the evidence and to draw inferences from it, bringing to bear its expertise in transportation. *Ralston Purina Co. v. Louisville & N. Ry.*, 426 U.S. 476, 477–78, 96 S.Ct. 2160, 2161, 48 L.Ed.2d 781 (1976); *United States v. Chicago Heights Trucking Co., supra.* It would be a dereliction of our appellate duty to accept the invitation of the State of Texas and Tex-Iron to tabulate and discuss all of the evidence and then to reappraise it. Having subjected the evidence to a "thorough, probing, in-depth review," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 152 (1971), we find it substantial and would not characterize as unreasonable the collective mind that accepted it.

■ Tex-Iron contends that the ICC followed incorrect procedures. However, the substantive decision to approve the abandonment is separate from the procedural orders dealing with such matters as when a certificate will be issued and when subsidy offers will be considered. Neither of these arise until *after* the Commission has made a substantive determination to authorize abandonment. The procedural orders had little or nothing to do with the actual merits of the abandonment application, *i. e.*, whether the proposed abandonment is consistent with the present or future public convenience and necessity under 49 U.S.C. § 10903(a).

For these reasons the decision of the ICC is AFFIRMED.