748 F.2d 1006
 GLAZER STEEL CORPORATION, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and the United States of
America, Respondent.
The CITY OF NEW ORLEANS, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and the United States of
America, Respondent.
 Nos. 84-4237, 84-4240
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 17, 1984.
 Stone, Pigman, Walther, Wittmann & Hutchinson, Michael R. Fontham, Paul L. Zimmering, New Orleans, La., for Glazer Steel Corp.
 John Broadley, Gen. Counsel, Louis Mackall, ICC, William French Smith, Atty. Gen., Barry Grossman, U.S. Dept. of Justice, Washington, D.C., for I.C.C. and U.S.
 John W. Adams, Jr., Mobile, Ala., for Illinois Cent. Gulf R. Co.
 Bruce E. Naccari, Asst. City Atty., New Orleans, La., for City of New Orleans.
 Petitions for Review of Orders of the Interstate Commerce Commission.
 Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 The City of New Orleans and Glazer Steel and Aluminum Corporation petition for review of the decision of the Interstate Commerce Commission granting an application by Illinois Central Gulf Railroad Company (ICG) for abandonment of approximately two and one-half miles of railroad line in New Orleans. Finding the decision by the ICC supported by substantial evidence and neither arbitrary, capricious nor an abuse of discretion, we deny the petitions and affirm the Commission.
 
 Facts
 
 2
 Following the requirements of the ICC regulations, 49 C.F.R. 1152.20, the ICG filed a notice of intent to abandon a part of its line in the New Orleans warehouse district. The notice described the line, explained ICG's reasons for the abandonment and reminded that a protest should contain, inter alia:
 
 
 3
 (3) Specific reason(s) for opposing the abandonment, including information with respect to protestant's reliance on the involved service, with allegations of fact supported by an affidavit of personal knowledge of the facts;
 
 
 4
 (4) Any rebuttal of information or material submitted by the applicant
 
 
 5
 The City of New Orleans protested, contending that the line served 90 businesses that would be without adequate rail service. The City argued that if the line were abandoned many of these businesses, representing 2,100 jobs, would have to locate elsewhere, with a resulting loss of jobs, tax-revenues, local sales and similar incidents of local industrial activity. Glazer, the sole rail user who protested, argued that the ICG should be required to make arrangements with the New Orleans Public Belt Railroad for continuation of service. The Railway Labor Executives Association filed a "form" protest asking that adequate labor protection be imposed.
 
 
 6
 ICG offered evidence reflecting that it had operating losses in the subject area of $149,000 in 1981, $108,000 in 1982 and $130,000 in the base year (July 1, 1982 to June 30, 1983). In addition, traffic steadily declined from 521 cars in 1981 to 311 cars in the base year. ICG listed 12 users of its services; most had a significant drop in traffic. By 1983 only six shippers actually used the rail service. No evidence was submitted to support an expected increase in future demand. ICG further noted that rehabilitative work on the line would cost approximately $30,000 with a like annual cost of upkeep. As to alternative services, the record reflects that 45 motor common carriers serve the New Orleans commercial zone, together with five other rail carriers and numerous water carriers. ICG affirmed its intention to maintain a rail terminal within 1/2 mile of the subject area.
 
 
 7
 The Board weighed the evidence presented and concluded that the application was well-founded and that the objections by the City of New Orleans and Glazer were insufficient to defeat the abandonment request.
 
 Analysis
 
 8
 The ICC is vested with authority to determine when the public convenience and necessity warrants abandonment of a rail line. In reaching a decision on abandonment, the Commission must determine whether the burden placed on the carrier and on interstate commerce from continued operation outweighs the public need for the service and the adverse impact on community and local interests. Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878 (1926). That decision is entrusted to the Commission's sound discretion. 49 U.S.C. Sec. 10903(a). See State of Texas v. United States, 642 F.2d 87 (5th Cir.1981). In exercising that discretion, the Commission is entitled to substantial latitude in balancing the competing interests. Purcell v. United States, 315 U.S. 381, 62 S.Ct. 709, 86 L.Ed. 910 (1942).
 
 
 9
 The concomitant of the Commission's broad discretion is a narrow scope of judicial review of its action. Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); United States v. Southern Ry., 364 F.2d 86 (5th Cir.1966), cert. denied, 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967). If the findings and conclusions of the Commission are supported by substantial evidence, they will be upheld unless found to be " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' as provided in 5 U.S.C. Sec. 706(2)(A)." Bowman Transportation, 419 U.S. at 284, 95 S.Ct. at 441.
 
 
 10
 The ICG evidence clearly reflected the burden on itself and interstate commerce, and demonstrated the impact on the public, including the shipping alternatives. The objections by the City were largely conclusional; no meaningful evidence was offered. The Commission thoughtfully balanced the competing interests and concluded that the public convenience and necessity permitted the line abandonment. As we earlier observed: "It is the Commission's exclusive province to draw every legitimate inference from the evidence and to evaluate and determine its weight." State of Texas, 642 F.2d at 89.
 
 
 11
 Reviewing the record in its entirety we are persuaded that the Commission's decision is overwhelmingly supported by the evidence and we perceive no abuse of discretion whatsoever. The petitions for review are accordingly DENIED. The decision by the Commission is AFFIRMED.