VILLAGE OF CANDOR, Ward & Van Scoy, Inc., Candor Cooperative G.L.F. Service, Inc., Philip M. King, President of Candor Business Bureau, Arthur Hollenbeck and Gerald Hollenbeck, co-partners, doing business under the firm name and style of Arthur Hollenbeck & Son, and Town of Candor, Plaintiffs,

v.

UNITED STATES of America and The Delaware, Lackawanna & Western Railroad Company, Defendants,

and

INTERSTATE COMMERCE COMMISSION, Intervening Defendant.

Civ. A. No. 6505.

United States District Court N. D. New York.

May 21, 1957.

---

2. Section 315(a), Immigration and Nationality Act, 8 U.S.C.A. § 1426(a).

Harrison, Coughlin, Dermody & Ingalls, George Coughlin and Bertram W. Eisenberg, Binghamton, N. Y., for plaintiffs.

Victor R. Hansen, Asst. Atty. Gen., Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., Charles R. Esherick, Dept. of Justice, Washington, D. C., for defendant United States.

Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., by Raymond Hackbarth, Syracuse, and Richard Costello, New York City, for defendant Delaware, L. & W. R. Co.

Robert W. Ginnane, Gen. Counsel, B. Franklin Taylor, Jr., Washington, D. C., for intervening defendant Interstate Commerce Commission.

Before CLARK, Circuit Judge, and BRENNAN and FOLEY, District Judges.

BRENNAN, District Judge.

This action is brought to enjoin, set aside and annul certain orders of the Interstate Commerce Commission which in effect authorize the abandonment by defendant, Delaware, Lackawanna & Western Railroad Company, of its branch line running from the Village of Owego, New York, to the City of Ithaca, New York. Jurisdiction is based upon

the appropriate provisions of the statutes 49 U.S.C.A. § 1(20) and 28 U.S.C.A. §§ 1336, 1398, 2321 and 2325.

Application, seeking a certificate authorizing the abandonment of the branch, was filed in November 1955. Public hearings were thereafter held on March 29 and 30, 1956. Exceptions thereto were later filed. The Commission thereafter filed its report and an order, dated October 25, 1956, was entered permitting the abandonment of the branch. Petitions for reconsideration and for a further hearing to consider alleged new evidence were thereafter made and denied by orders of January 28, 1957 and March 5, 1957. March 15, 1957 was fixed as the effective date of the certificate permitting such abandonment. This action was started about March 12, 1957. A temporary restraining order was issued. A three-judge statutory court was convened. By agreement, the consideration of the application for a temporary and final injunction came on to be heard before said court on April 23, 1957. The record made before the Interstate Commerce Commission is before the court. Additional affidavits were offered by plaintiffs in lieu of oral evidence.

The essential facts, as disclosed, may be briefly stated. There has been in existence since 1833 a railroad line extending a distance of 34.79 miles from the Village of Owego to the City of Ithaca, New York. The line was operated under lease by the Delaware, Lackawanna & Western Railroad Company from 1855 to 1946 when it was acquired by merger. It is generally referred to as the Ithaca Branch, same connecting with the main line of the Delaware, Lackawanna & Western Railroad at Owego. The branch follows generally an improved state highway. It has served primarily some five or six villages or hamlets and the area traversed may be generally referred to as farming or residential area. Passenger service has been suspended over the branch since 1942.

It is sufficient to say that the evidence disclosed that the branch as a whole has been a losing proposition from a financial standpoint for at least five years; that a considerable outlay of money is required for maintenance purposes to restore and to maintain the branch in a safe operating condition. Operations at the present time are restricted as to speed and the type of equipment which may be used on and over the branch.

There is actually no dispute or objection to the abandonment of that part of the branch extending from the Village of Candor to the City of Ithaca and no serious objection was made thereto. Objections were filed to the abandonment of the whole branch by Arthur Hollenbeck & Son, Ward & Van Scoy, Inc. and Candor Cooperative G.L.F. Service Inc. of Candor, New York, all of whom are engaged in the manufacturing and sale of feed and the furnishing of farm equipment supplies at Candor and Catatonk, New York. They raise no objection however to the abandonment of that segment of the branch between Candor and Ithaca. Their evidence and argument is limited to the contention that the portion of the branch between Owego and Candor—a distance of ten and seven-tenths miles—should be deleted from the order permitting the abandonment.

The contention is based on argument that the record is insufficient to justify the conclusion that the operation of the railroad over the Owego-Candor segment is detrimental to the public interest; that the Commission erred in denying the opportunity to present additional evidence relating to a proposed tax reduction applicable to that particular segment and that the Commission had no jurisdiction since the Owego-Candor segment was a spur and not a line of the railroad or portion thereof. In substance, the petitioners contend that the Owego-Candor segment should be considered separate and distinct from the branch as a whole and that evidence should be received and findings made applying particularly thereto.

The contention that the Commission lacked jurisdiction is rejected. No argument is made that the proceeding, as

instituted, is without the provisions of the statute, but it is argued that by the hypothetical separation of the Owego-Candor segment from the Ithaca branch, such segment is transformed into an industrial spur, and the Commission thereby has lost jurisdiction. 49 U.S.C.A. § 1(22).

The railroad from Owego to Ithaca permission to abandon, which is sought, is without doubt a branch line (49 U.S. C.A. § 1(18). While the word "spur", as used in the statute is not defined therein, its characteristics are discussed at some length in Pennsylvania R. Co. v. Reading Co., D.C., 132 F.Supp. 616, affirmed, 3 Cir., 226 F.2d 958. Such characteristics are not found here. Compare Detroit & Toledo Shore Line R. Co. v. New York Central R. Co., 6 Cir., 233 F.2d 168 and Public Service Commission v. U. S., D.C., 56 F.Supp. 351. The case of United States v. State of Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070, relied upon by the plaintiffs, is plainly distinguishable.

Objection is made that the Village and Town of Candor and the Candor Better Business Bureau are improper parties plaintiff. Their interest as such parties is not convincing but since they could well be heard as intervenors (28 U.S. C.A. § 2323) and do not appear by separate attorneys, a determination of their status is unimportant to this decision.

An approach to the problem involved here is made with a knowledge of the limited function and power of this Court. The citation of a single authority is sufficient. United States v. Pierce Auto Freight Lines, 327 U.S. 515, at pages 535–536, 66 S.Ct. 687, at pages 697–698, 90 L.Ed. 821.

The existence of a basis in law and fact for the action of the Commission must be determined upon the record as made. In examining same, it must be borne in mind that the protests made by these plaintiffs at the opening of the hearing were directed to the abandonment of the whole branch. In other words, the request of the railroad was protested in its entirety. The bulk of the evidence was offered and received on that issue. It did develop, however, in the evidence offered by the present plaintiffs that their principal objection was directed to the abandonment of the Owego-Candor segment. Their exceptions to the Examiner's report and complaint in this action relate only thereto. By amputating the Candor-Ithaca portion of the branch, the plaintiffs attempt to change the issue to relate to the remainder alone.

■ The evidence offered and the contention made received the consideration of the Commission. Its ultimate finding is contained in the following paragraph of its report.

"In the light of the foregoing, we conclude that continued operation of the branch or of the portion of the branch between Owego and Candor as urged by the protestants would impose an undue and unnecessary burden upon the applicant and upon interstate commerce".

■ It is sufficient to say, in view of plaintiffs' exceptions and contentions, that considering the branch as a whole, the evidence offered and the secondary findings made are amply sufficient to support the above conclusion. The use of the five-year period for the consideration of branch operations and the method of apportioning revenues and expenses were entirely within the discretion of the Commission exercised in the light of prior experience.

■ The situation developed by plaintiffs upon the hearing and by the exceptions filed, amounts to the proposal of a new or alternative plan. It would seem that the burden of establishing its effectiveness in the public interest rests upon the proponent. The Railroad could hardly be expected, in its overall evidence, to negative such interest as to all possible alterations of its original request for permission to abandon the whole branch. The evidence is then to be considered and the findings examined with an understanding of the purpose

of the original petition and situation which later developed.

■ While all of the evidence offered by the protestants bore only on the Owego-Candor segment, when analyzed, at best, it showed only that the discontinuance thereof would result in a competitive disadvantage to the three protestants with an anticipated financial loss to them. There is no evidence of damage to the public interest either by way of increased costs or the elimination of competition. Other means of freight transportation are available. Six motor carriers operate over paralleling highways. They are in fact used in part by the three protestants in the ordinary operation of their businesses. The case of United States Feldspar Corp. v. U. S., D.C., 38 F.2d 91, is comparable in its facts. The statement of Judge Hand at page 95 "* * * It may not, however, insist upon the maintenance of a burdensome line solely for its own benefit; the conflict of interests so arising is precisely the kind of a question which the Commission is set up to solve * * *" is applicable here. Inconvenience, diminution of property values or financial loss, limited to a few patrons, do not void the order challenged here. Woodruff v. U. S., D.C., 40 F.Supp. 949.

■ The evidence as to the revenues to be received and the expenses to be incurred in the operation of the Owego-Candor segment alone is recognized by the Commission as inconclusive. In fact, no attempt was made to segregate such revenues and expenses from the branch taken as a whole. There is, however, evidence by the Railroad's maintenance engineer that $25,000 per year for the next five years should be allocated for maintenance expenditures over that segment. This evidence was not entirely accepted by the Commission but they did indicate that substantial amounts for rehabilitation would be required and that same would be at least equal to and probably in excess of earnings. The burden upon interstate commerce need not be determined with mathematical exact-

ness. Transit Commission of State of New York v. U. S., 284 U.S. 360, at page 370, 52 S.Ct. 157, at page 159, 76 L.Ed. 342.

■ The evidence showed and the Commission found that freight traffic had decreased on the Owego-Candor segment in the year preceding the hearing. It found also that there was no reasonable basis for concluding that traffic would improve or that the decrease would not continue. It gave consideration to the fact that the segment was considered short in length insofar as railroad operation is concerned. Recognition was given in its report that more than one-half of the branch traffic originates or terminates at Ithaca none of which would be available to support the Owego-Candor segment. The informed judgment of the Commission is expressed in the thought that the continued operations over the Owego-Candor portion of the branch would involve expenses out of all proportion to the revenues received by the applicant or the benefits realized therefrom by the public. All of the above is pertinent to costs as related to revenues. This is only one element to be considered and not even the predominant one. "The sole test prescribed is that abandonment be consistent with public necessity and convenience". State of Colorado v. U. S., 271 U.S. 153, at page 168, 46 S.Ct. 452, at page 456, 70 L. Ed. 878.

■■ Certainly the greater experience of the Commission allows them some latitude in balancing the considerations which affect the public interests. We may not substitute our judgment for theirs. Cf. Chesapeake & O. Ry. Co. v. U. S., D.C., 35 F.2d 769, at page 774. The report shows the factors weighed and shows without doubt what the Commission thought and concluded and thereby the real function of findings is served. Warrant in the record and a rational basis for the conclusions are the total requirements. Rochester Tel. Corp. v. U. S., 307 U.S. 125, at page 146, 59 S.Ct. 754, at page 764, 83 L.Ed. 1147. Since

the Commission has spoken and issued its order as to the branch as a whole, it cannot be said that the treatment and consideration of the Owego-Candor segment was arbitrary or without substantial evidence.

The matter of the Commission's disposition of the requests for reconsideration and for an additional hearing are peculiarly within its province and should not be disturbed in the absence of fundamental unfairness or plain abuse of discretion. I. C. C. v. Jersey City, 322 U.S. 503, at page 517, 64 S.Ct. 1129, at page 1135, 88 L.Ed. 1420. Neither is shown to exist here in view of the inconclusive nature of the new evidence to be offered.

Accordingly, the defendants must have judgment. The Clerk is directed to enter judgment for the defendants, dismissing the action on the merits, immediately on the filing of this opinion.