**STATE OF ARIZONA et al.,**
**Plaintiffs,**

**v.**

**UNITED STATES of America et al.,**
**Defendants.**

**Civ. No. 3975.**

United States District Court
D. Arizona.

May 21, 1963.

Daniel E. Moore and James B. Greenwood, Bisbee, Ariz., for plaintiffs.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Charles A. Muecke, U. S. Atty., Phoenix, Ariz., for the United States.

Robert W. Ginnane, Gen. Counsel, and Leonard S. Goodman, Atty., Interstate Commerce Comm., Washington, D. C., for Interstate Commerce Commission.

Randolph Karr, San Francisco, Cal., and Evans, Kitchel & Jenckes, Phoenix, Ariz., for Southern Pacific Co.

Before BARNES, Circuit Judge and WALSH and DAVIS, District Judges.

PER CURIAM.

We adopt the following statement describing the nature of the action, the proceedings before the Commission, the proceedings in this court, the statutes involved and the questions presented. They are agreed upon by the United States of America, the Interstate Commerce Commission, and the Southern Pacific Company.

"This is an action under sections 1336, 1398, 2284 and 2321–2325 of the United States Code, Title 28, to set aside a report and orders of the Interstate Commerce Commission entered in the proceeding entitled Southern Pacific Company Abandonment, Cochise County, Ariz., and Hidalgo, Grant, Luna and Dona Ana Counties, N. Mex., Finance Docket No. 20737, decided by the Commission's Division 3 on November 15, 1961. In that proceeding the Commission authorized the defendant Southern Pacific Company [1] to abandon a line of railroad between Douglas, Arizona, and Anapra, New Mexico, which roughly parallels a line to be wholly retained between Tucson, Arizona, and El Paso, Texas, via Lords-

---

1. The defendant Southern Pacific Company was the applicant before the Interstate Commerce Commission and hereafter is variously referred to as applicant **or** Southern Pacific Company.

burg and Deming, New Mexico. The retained line comprises the so-called 'North Line' between Tucson and El Paso, and the line to be abandoned comprises a part of the so-called 'South Line' between those points.

## "PROCEEDINGS BEFORE THE COMMISSION

"On July 28, 1959, the Southern Pacific filed with the Commission an application to abandon a portion of the South Line, and on September 22, 1959, filed its Return to Questionnaire, pursuant to the regulations of the Commission, 49 C.F.R. Part 42. The application was protested by several groups. The proceeding was set for hearing before a duly qualified hearing examiner of the Commission; the hearing was held on March 22, 23, 24 and 25, 1960, in Douglas, Arizona, and on September 21, 1960, in Washington, D.C.

"On March 22, 1961, the examiner served his recommended report and order, which would have permitted the proposed abandonment, subject to certain conditions. These conditions included financial protection to employees affected by the abandonment, and that the carrier take necessary steps to implement its assurances that freight rates to and from the Douglas-Bisbee area will not be affected by the abandonment of the Douglas-Anapra segment and that the area not be treated as a branch line at which arbitraries are assessed over the rates to main-line points. Various protestants filed exceptions and the applicant Southern Pacific filed both exceptions and a reply to the exceptions of the protestants. Oral argument was heard by Division 3 on July 28, 1961. On November 15, 1961, the Commission by its Division 3 entered a report and order authorizing the proposed abandonment, subject to the conditions recommended by the examiner.

"On July 3, 1961, prior to the oral argument before Division 3, several protestants, including many of the plaintiffs herein, filed a petition requesting (1) the entire Commission hear oral argument, and (2) that the entire Commission determine and announce that the proceeding involves issues of general transportation importance. The entire Commission entered an order of July 25, 1961, denying the request for oral argument before the entire eleven-member Commission, and deferring decision on the remainder of the petition until oral argument be heard as scheduled before the three Commissioners of Division 3. The order of July 25 is attached to the complaint herein as Exhibit C. On October 11, 1961, the entire Commission entered a further order denying the request of the protestants that the proceeding involves issues of general transportation importance. The order of October 11 is attached to the complaint as Exhibit B. Protestants thereafter filed a petition for reconsideration of the orders of July 25 and October 11, which was denied by order of the entire Commission on March 27, 1962.

"The present suit was filed by plaintiffs in this court on December 18, 1961. Simultaneously, plaintiffs attempted to file a petition for reconsideration with the Commission of the decision of Division 3. The petition was received at the Commission on December 18. The copies of the petition were returned to counsel for plaintiffs by the Secretary of the Commission who stated that the decision of Division 3 had become administratively final pursuant to Rule 1.101 of the Commission's General Rules of Practice. The Secretary further explained his action in a letter to Mr. Daniel Moore, counsel for plaintiffs, of January 10, 1962, stating in pertinent part:

"'As you know, the Commission declined to declare this proceeding as one of general transportation importance, and the initial decision herein was made by a hearing examiner rather than by the Division. As you will also note, by comparing the report and recommended certificate of the hearing examiner with the report and certificate of the Division, there were no reversals, changes, or

modifications of any of the hearing examiner's conclusions, or of his ultimate decision, by the Division. Such changes or modifications as were made by the Division were only minor in nature and were actually made only to the hearing examiner's statements of fact. They were of such nature as to have no material affect upon his decision, which was concurred in without modification by the Division.

"'Inasmuch as the General Rules of Practice provide for the administrative finality of the Division's decisions, there is no necessity for the Division to announce such fact in each individual decision.

"'In view of the facts that the proceeding has not been declared to be of general transportation importance, there was no reversal, change, or modification of the hearing examiner's decision, and the initial decision was not made by the Division, the Division's decision is administratively final, as provided for by the Commission's General Rules of Practice and I am without authority to accept the petition for reconsideration. Accordingly, I had no alternative to returning the petition to Mr. Blaine as an enclosure to my letter to him of December 20, 1961.'

## "PROCEEDINGS IN COURT

"As noted above, the present action was filed in this court on December 18, 1961. On the following day, hearing was held before United States District Judge Arthur M. Davis, on plaintiffs' application for a temporary restraining order. Southern Pacific waived objection to entry of an order requiring it to maintain the physical facilities on the line in question pending a hearing before the full court of three judges. On December 19, the court entered an order restraining Southern Pacific from removing its tracks or disturbing the present physical facilities over the line proposed to be abandoned. The court issued the following restraining order:

"'The Court finds that the diversion of all trains over the north line of Southern Pacific will not result in irreparable damage pending a hearing before the Court of three judges.

"'The Court further finds that any action by the Southern Pacific Company to remove its tracks or otherwise change its physical facilities on the lines in controversy would result in irreparable injury should the three-judge court later uphold the contentions of the plaintiffs.

"'The Court finds that the proceedings before the Interstate Commerce Commission under 49 U.S.C.A. § 1(18) is adequate to support an order resulting in the discontinuance of passenger service without raising a question of irreparable damage.' The order was expressly entered 'without prejudice to the rights of any of the parties to these proceedings.'

## "STATUTE INVOLVED

"The statutory authority of the Commission to authorize an abandonment of a line of railroad is found in sections 1(18), 1(19), 1(20), and 1(22) of the Interstate Commerce Act, 49 U.S.C. §§ 1(18), 1(19), 1(20), and 1(22).

"The present case involves section 1 (18), which provides, in relevant part:

"'no carrier by railroad subject to this part shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment.'

"This suit also raises an issue under sections 17(6) and 17(9) of the Act, 49 U.S.C. §§ 17(6) and 17(9).

## "QUESTIONS PRESENTED

"1. The sole question before the court on the merits of the proposed abandonment of a portion of the South Line is whether the report and order of the Commission (Division 3) authorizing the abandonment is supported by adequate findings based upon substantial evidence of record.

"2. Insofar as the suit attacks the Commission's General Rules of Practice and Procedure, a further question is presented of whether the Rule restricting right to file a petition for reconsideration by the entire Commission of a decision of a division, is lawful and proper under section 17 of the statute (49 U.S.C. § 17)."

We answer both questions raised affirmatively.

The appellants contend that the action of the Commission in adopting regulations depriving appellants of the right to file a motion for rehearing after the decision of the appellate division presents a question as to whether the appellants have any right in this court. This claim is predicated upon their assertion that the appellate jurisdiction is fixed by § 17(9), and the grounds set forth therein require some sort of action or motion for rehearing before the matter can come before the court.

This action was instituted in this court by the appellants and no question has been raised by the appellees as to the right of appellants to maintain these proceedings.

It is therefore inappropriate that appellants, after having brought the present action, urge this court to find that they have no right to be here.

In the case of Malone Freight Lines, Inc. v. United States, D.C., 204 F.Supp. 745, the court had before it a similar contention with respect to the right to appear in court in the absence of a motion for rehearing, and in that case carefully analyzed all of the provisions of § 17, and came to the conclusion that § 17(9) does not speak in terms of jurisdiction, but merely is designed to require exhaustion of the administrative remedies before resort to the courts. That case further held that the regulation of the Commission prohibiting applications for rehearing were valid and binding, and in those cases the exhaustion of administrative remedies occurred at an earlier stage in the proceedings, but that at the time of the exhaustion of such remedies the right of resort to the court was clear. We concur in the result of that case.

The second contention of appellants is that under the regulations adopted by the Commission, even if it is assumed that they have a right to come to this court without first having filed a motion for rehearing, it was impossible to tell when the decision of the Commission became final, and consequently they were unable to tell with reasonable certainty when the time for filing this appeal would expire. This is the result of the provision that where the initial recommendations of the examiner are adopted by the division, that there is a right of rehearing, if the language of the division amounts to a change in the determination recommended by the examiner, while no such right is granted if the language of the division does not result in a change.

Appellants claim this denies them due process of law.

For there to be due process of law, it does not mean that each and every step in the proceedings be so crystal clear as to lend itself to only one construction in the minds of everyone who may consider it. In the instant case, the appellants followed a reasonable and prudent course of filing the appeal in court on the assumption that the decision of the division did not change the opinion of the examiner, but at the same time filing a motion for rehearing before the Commission on the ground that the division decision did result in a change. In the earlier hearing on appellants' application for a temporary restraining order, the question of the finality of the Commission's decision was raised by appellants, in order that there be no question of jurisdiction of the court to grant the requested relief, and in open court, respondent Southern Pacific Railroad expressed the opinion that the decision of the division was final, that no motion for rehearing was in order, and that it intended to discontinue the service of its trains at midnight on the day of the hearing in reliance upon the Commission's

decision, unless the court saw fit to grant the temporary restraining order.

These procedures afforded appellants sufficient clear and reasonable certainty, and we cannot concur in the claim that the proceedings deprived appellants of due process of law.

■ Appellants further contend that the regulation denying them a right to file a motion for rehearing is unlawful because the power granted to the Commission to take such steps under § 17(6) does not extend to cases involving general transportation importance, and that their case was of this character, and they were not afforded an opportunity to have the matter resolved by a determination of the Commission itself.

This contention is rebutted by the Interstate Commerce Commission pointing out that the records show that after the recommendation of the examiner and the exception and reply thereto, oral argument was held before Division No. 3, and that prior to such oral argument, appellants requested the entire Commission to hear oral arguments, and to hold that this proceeding involved issues of general transportation importance. The Commission promptly denied the request for oral argument, and deferred the determination of the question of general transportation importance until after all argument before Division No. 3. Thereafter, on October 11, 1961, by action of the entire Commission it was determined that these proceedings were not one of general transportation importance. Subsequent to that date, on November 15, 1961, Division No. 3 adopted the examiner's recommendation. It would thus appear that the full Commission itself made the determination, and appellants' contentions in this respect are lacking in merit.

This leaves two other contentions— one that the railroad failed to comply with the regulations of the Commission in apportioning future earnings of local bridge traffic from the portion of the road to be abandoned, and second that

the record before the Commission failed to sustain its action in authorizing the abandonment of the section of the road in question.

The record establishes that the railroad had followed a program of rebuilding and grading what would amount to the complete modernization of the North Branch of its line, running through Benson, and that for a period of time prior to the hearing, and during the year 1959, it had been carrying all but one half of one per cent of all Tucson-El Paso "through traffic" as compared to 87.4% carried during World War II. There has been no local freight handled on the South line since 1958. The North line has carried about 50% of the freight originating from Douglas, which has been transported to El Paso by the more circuitous route via Benson Junction. This action was justified upon the grounds that the Northern line was more efficient, was better equipped, and had grades which permitted the trains to operate at better times and at less expense. In view of this policy, which was well within the discretion of the company, it is clear that the revenue to be attributed to the abandoned section of the South line would be no more than nominal, and posed the question to the Commission very similar to the situation where a previously profitable line was authorized to be abandoned because of threatened inundation as a result of the construction of a dam.

■ With regard to the other question, an examination of the record before the Commission makes it clear that there was sufficient evidence in the record to support the action of the Commission in authorizing the abandonment of the line.

The decision of the Interstate Commerce Commission is affirmed, and it is ordered that plaintiffs' complaint be, and it hereby is, dismissed. The restraining order of December 19, 1961, restraining Southern Pacific from removing its tracks or disturbing the present physical facilities over the line proposed to be abandoned, is hereby dissolved.